# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JASON DILLON, an individual, | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | No. 69300-0-I |
| v. | ) | (Linked with No. 68345-4-I) |
| | ) | |
| SEATTLE DEPOSITION REPORTERS, | ) | |
| LLC, a Washington company; DAVIS | ) | PUBLISHED OPINION |
| WRIGHT TREMAINE, LLP, a | ) | |
| Washington company; JAMES GRANT | ) | |
| and Jane Doe Grant, individually and | ) | |
| the marital community composed | ) | |
| thereof if any, | ) | |
| | ) | |
| Defendants. | ) | FILED: January 21, 2014 |
| | ) | |

DWYER, J.—Washington's anti-SLAPP[1] statute protects persons who engage in "action[s] involving public participation and petition" from having to defend against a claim based on those actions.[2] The recording of telephone conversations is not such an action. This is so even when such recording is designed to gather evidence for a lawsuit between private parties. The anti-SLAPP statute does not operate to transform unprotected activity into protected activity simply because it is undertaken during the course of a lawsuit.

---

[1] Washington Act Limiting Strategic Lawsuits Against Public Participation.
[2] RCW 4.24.525(2).

In the matter before us, Jason Dillon filed suit against Seattle Deposition Reporters, LLC, Davis Wright Tremaine, LLP, and James Grant (collectively SDR), alleging certain violations of the privacy act[3] for having recorded Dillon's telephone conversations with Grant and Cassandra Kennan without his knowledge. SDR moved for dismissal on summary judgment, asserting that the conversations were not private and that Dillon's claims were barred by collateral estoppel. SDR also moved to strike the claims pursuant to the anti-SLAPP statute. The trial court ruled that Dillon had no expectation of privacy in the telephone conversations and granted the motion for summary judgment. The trial court further found that the anti-SLAPP statute applied, and awarded to SDR statutory damages of $10,000 per defendant plus attorney fees of $40,000. Judgment in the total amount of $70,000 was entered against Dillon.

Dillon contends that the trial court erred by granting summary judgment, asserting that genuine issues of material fact exist as to whether the telephone conversations he had with Grant and Kennan were private. Dillon also avers that the anti-SLAPP statute does not apply to his claims. Because Dillon presented triable issues of fact, and collateral estoppel does not apply to preclude his privacy act claims, the trial court erred by entering summary judgment in favor of SDR. Furthermore, the anti-SLAPP statute does not apply to Dillon's claims, as SDR's actions did not involve public participation or petition. Thus, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.

---

[3] Ch. 9.73 RCW.

I

Dillon is the former vice-president of NetLogix, a company headed by Scott Akrie and based in San Diego, California. NetLogix contracted with T-Mobile to "perform services in connection with the build out of [T-Mobile's] cellular phone network in California." In 2010, NetLogix sued T-Mobile in the United States District Court, Western District of Washington, for breach of contract. Grant and Kennan represented T-Mobile in the federal court lawsuit. On August 24, 2011, Dillon e-mailed Grant and Kennan at their law firm, Davis Wright Tremaine (DWT), stating that he would like to "talk about the facts" in the pending federal court action. Kennan arranged for Dillon to call the next day.

Dillon telephoned DWT offices as planned on August 25, 2011. At the start of the conversation, Grant told Dillon,

> I wanted to point out something before we get started because we have you on the speaker phone because Cassi and I are both here. And I've got my assistant Thad, who's writing stuff down so that we don't have to worry about taking notes while we're talking to you.

Thad Byrd was not, in actuality, Grant's assistant. Rather, he was a certified court reporter employed by Seattle Deposition Reporters. DWT had previously made arrangements with Seattle Deposition Reporters to have a court reporter sit in on and transcribe the telephone conversation. Byrd set up his stenographic equipment in the room with Grant and Kennan and transcribed their conversation with Dillon. Neither Grant, Kennan, nor Byrd apprised Dillon of this information.

Before revealing any information, Dillon told Grant,

> You know, my only concern is I just need to make sure that I'm protected as well if Scott tries to come after me, or I don't want you guys trying to come after me or T-Mobile. I want to make sure I'm protecting myself, but I did want to speak with you guys.

Grant responded, "Okay, understood. At this time, we just want to hear what you have to say." Dillon also stated, "Just so I protect myself, maybe it's better that I actually just get my own attorney, talk to them about kind of what–you know, about the information and get some advice from them, and then call you guys back."

Nonetheless, Dillon continued the conversation with Grant and Kennan. Dillon proceeded to describe various instances of misconduct by both parties to the federal court action, including a kickback scheme instituted by T-Mobile employees, falsification of records committed by NetLogix employees, and willful destruction of unfavorable evidence committed by Akrie or at Akrie's direction. Dillon also stated that Akrie "offered me 10 percent of the profit of this lawsuit to support him," and that he did not "have a problem writing a declaration for you guys."

Dillon telephoned DWT again on September 16, 2011. This telephone call was also transcribed by an employee of Seattle Deposition Reporters.[4] Again, Dillon was not apprised of the presence of the court reporter, or even of anyone there to "take notes" during this call. During this call, Dillon confirmed, with one small change, the written declaration Grant and Kennan had previously prepared

---

[4] Mark Hovila was the court reporter for the second telephone call. Neither Byrd nor Hovila is a party to this action.

and sent to him. The following exchange occurred between Grant and Dillon during the call:

> Q. [Grant]. I had thought of actually putting something in the declaration saying that that's your concern and that's why you approached us, that your concern is that you had been told, instructed to provide information that was inaccurate. Is that something that you'd be comfortable saying, or that just between us at this point?
> A. [Dillon]. Sure.
> Q. Okay.
> A. Well, actually I talked with a friend who's an attorney, and he said just to protect myself from Scott is–Scott and Bill, I guess, mainly, is, you know, for you guys to take my deposition again and ask these questions, so I'm under oath and they can't come back and say that, you know, that I'm trying to maliciously hurt Scott. I'm not.

Dillon also elaborated on information he had revealed during the first call, and informed Grant and Kennan that Akrie had coached NetLogix employees on what to say in connection with the lawsuit. However, 10 days later, Dillon e-mailed Grant and Kennan stating that he was "unable to sign" the declaration they had prepared.[5]

On October 6, 2011, T-Mobile filed a motion for dismissal in the federal court action alleging spoliation of evidence, based largely on statements uttered by Dillon in the telephone conversations. Given that Dillon refused to sign the proffered declaration, T-Mobile filed portions of the transcripts of both calls in support of the motion. After Dillon learned of this, he sent an e-mail to Grant and Kennan expressing his "outrage" at them for having "deceivingly record[ed]" the conversations. NetLogix and Dillon then requested copies of the transcripts in

---

[5] Dillon also sent the e-mail to Akrie.

their entirety. DWT refused NetLogix's request, asserting that the transcripts were protected by the work product privilege.[6]

On February 2 and February 16, 2012,[7] the federal court held an evidentiary hearing to determine whether NetLogix had willfully destroyed evidence and if dismissal was warranted as a result. The court called Dillon to testify as a witness at that hearing. Dillon disavowed a number of statements from both the August 25 and September 16 telephone calls, and repeatedly testified that he had made various previous statements "out of frustration." The court requested briefing from both parties prior to making a credibility determination as to Dillon's testimony.

The federal court issued its ruling on March 14, 2012. The court found that Dillon's statements in the telephone conversations were credible, and that Dillon's testimony at the evidentiary hearing was "wholly incredible." The court further found that the transcripts presented "overwhelming evidence of spoliation," and concluded that dismissal of the case was "the only appropriate remedy" given the egregious misconduct committed by the plaintiffs. In its written opinion, the court stated, "[T]he Court does not believe that Defendant's counsel violated Washington law by recording their discussions with Dillon." Volcan Grp., Inc. v. T-Mobile USA, Inc., 940 F.Supp.2d 1327, 1338 (W.D. Wash. 2012). In a footnote to its opinion, the court stated:

---

[6] The federal court later determined that DWT had waived any privilege by filing portions of the transcripts with the court, and ordered that DWT produce the transcripts in full.

[7] The federal court truncated the hearing on February 2, continuing the matter until February 16 to allow Dillon time to review the transcripts of the telephone calls.

> Although Dillon clearly did not consent to a transcription of his conversation with Defendant's counsel, that is not to say that he intended the call to be "private." On the contrary, Dillon clearly understood that Defendant's counsel intended to use the information he was providing in connection with these proceedings, and Dillon even offered to provide them with a sworn declaration regarding his statements. As such, those statements were not intended to be, and were not in fact, "private."

Volcan Grp., 940 F.Supp.2d at 1338 n.7. The court granted the motion to dismiss, but not before admonishing both parties and their counsel for their unprofessional behavior.[8]

Dillon filed suit against SDR in King County Superior Court, alleging that the various defendants violated the privacy act by recording the telephone conversations of August 25 and September 16. SDR moved for summary judgment, asserting that the conversations were not private and that collateral estoppel barred Dillon's claims. SDR also moved to strike Dillon's claims pursuant to Washington's anti-SLAPP statute. In opposition to SDR's motions, Dillon submitted a declaration, wherein he asserted that he "specifically told [Kennan] that I did not want anything I told them in the telephone conversations

---

[8] As to T-Mobile's and DWT's behavior, the court stated:
Neither Defendant nor its counsel should be proud of this result. While the Court does not believe that Defendant's counsel violated Washington law by recording their discussions with Dillon, it is clear that the representations they made to Dillon at the outset of those discussions led him to adopt the mistaken belief that his statements were not being transcribed. The Court believes that Defendant's counsel knew of Dillon's misunderstanding, but intentionally did nothing to correct it. The Court questions whether such conduct can be squared with [the] demanding standards of a lawyer's professional responsibilities under RPC 4.1(a).
Volcan Grp., 940 F.Supp.2d at 1338 (footnote omitted). The court further noted, "The Court has no doubt that Defendant initially redacted the Transcripts in order to conceal Dillon's statements regarding the kickback scheme." Volcan Grp., 940 F.Supp.2d at 1338 n.8.
RPC 4.1 states, in relevant part, "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person."

to be part of the public record" and that he agreed to speak with Grant and Kennan only after they assured him that the conversations would be kept private.[9] Dillon moved to bifurcate the anti-SLAPP hearing in order to address the two steps of the statutory inquiry separately,[10] and moved to compel outstanding discovery. The trial court denied both of Dillon's motions.

The trial court heard both of SDR's motions on June 15, 2012. The trial court heard argument and issued its ruling on the summary judgment motion before it considered the anti-SLAPP motion. In ruling on the summary judgment motion, the trial court declined to apply collateral estoppel to preclude Dillon's claims. However, relying on State v. Townsend, 147 Wn.2d 666, 57 P.3d 255 (2002), State v. Clark, 129 Wn.2d 211, 916 P.2d 384 (1996), and State v. Mankin, 158 Wn. App. 111, 241 P.3d 421 (2010), review denied, 171 Wn.2d 1003 (2011), the trial court ruled that Dillon had no subjective expectation of privacy when he telephoned Grant and Kennan. This was so, the trial court explained, because:

> Now, he may have had an . . . expectation of privacy that his words would not be transcribed word by word, but he certainly knew that he was talking to lawyers who would be taking notes. There's no reason why he didn't think otherwise.
>
> And he also had reason to believe that the lawyers would be talking to other people about what they had heard in the meeting, that they would be drafting a declaration. And . . . so there was no

---

[9] Dillon originally submitted his declaration in the federal court action. An exact copy thereof was submitted in this action as an attachment to the declaration of Dennis Moran.

[10] "A moving party bringing a special motion to strike a claim under this subsection has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition. If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim." RCW 4.24.525(4)(b).

expectation of privacy with respect to what was said in that meeting.

Mr. Dillon had indicated to others that he was going to have the meeting. He, in fact, told others after the meeting . . . what had occurred.

The trial court then went on to consider the anti-SLAPP issue. The trial court began by saying, "It seems like the Court's already ruled on the second part of that, because . . . at this point, Mr. Moran[11] won't be able to show . . . by clear and convincing evidence a likelihood of prevailing on the merits . . . ." After argument by both parties, the trial court asked counsel for SDR whether "the fact that this Court has already made a ruling on the summary judgment motion enter[s] into" the analysis of whether SDR could show that its conduct fell under the ambit of the anti-SLAPP statute. SDR's counsel replied,

Yes, because I've shown you by a preponderance of the evidence and, indeed, more than by. I've shown you as a matter of law in the undisputed facts that the activity that gave rise to this claim is other lawful conduct in furtherance of this right to participate in governmental functions.

The trial court agreed, deciding the anti-SLAPP issue as follows:

[T]he issue before the Court is whether or not the petitioner under the SLAPP statute has shown by a preponderance of the evidence that this action or this lawsuit is based on an action involving public participation.

And . . . it seems clear to the Court that the meeting that took place in Mr. Grant's office was certainly in connection with a judicial proceeding. And so . . . that brings us to the next question, which is[,] was this lawful conduct[?] And . . . that's where we get to I think the California case where we had a rogue investigator who had been found to have engaged in criminal conduct in wiretapping

---

[11] Counsel for Dillon.

numerous telephones.[12]

And the California Court said – first they pointed out – that these activities were found to be criminal extortion as a matter of law, and then they go on to say when a defendant's assertedly protected activity may or may not be criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law.

Well, this Court has already found as a matter of law that the activity was not criminal, and therefore, the Court finds that the Gerbosi case is distinguishable.

And . . . I do agree with Mr. Cromwell[13] that the analysis is fairly straightforward here. The Court needs to only find that the activity that is the subject of the privacy act claim was lawful activity in connection with a judicial proceeding, and that was, I think, quite clearly the case. And . . . this only needs to be established by a preponderance of the evidence, and I think that the petitioners have satisfied that burden.

And the burden, then, of course shifts to the other side to show by clear and convincing evidence that they're likely to prevail on the merits. And since I've already granted summary judgment for the SLAPP petitioners on that issue, I find that that burden cannot be met. And therefore, I conclude that the SLAPP petition should be granted.

Dillon filed a motion for reconsideration, which the trial court denied in all substantive respects.[14] Pursuant to the anti-SLAPP statute, the trial court awarded to SDR the statutory damage amount of $30,000 ($10,000 for each defendant) and $40,000 in attorney fees and costs.

Dillon appeals.

---

[12] Gerbosi v. Gaims, Weil, West & Epstein, LLP, 193 Cal.App.4th 435, 122 Cal.Rptr.3d 73 (Cal.App. 2011).

[13] Counsel for SDR.

[14] The trial court granted the motion with respect to its failure to comply with the five day notice requirement of CR 54(f)(2) before issuing its order. The court reissued its order, without substantive amendment, on August 31, 2012.

II

Dillon first contends that the trial court erred by granting summary judgment in favor of SDR on his privacy act claims. This is so, he asserts, because triable issues of fact exist as to whether the telephone conversations between Dillon, Grant, and Kennan were private. We agree.

In considering this contention, we employ a familiar standard of review.

> We engage in a de novo review of a ruling granting summary judgment. Anderson v. Weslo, Inc., 79 Wn. App. 829, 833, 906 P.2d 336 (1995). Thus, we engage in the same inquiry as the trial court. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 698, 952 P.2d 590 (1998). Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. CR 56(c); Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). All reasonable inferences from the evidence must be construed in favor of the nonmoving party. Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 349, 588 P.2d 1346 (1979).

Green v. Normandy Park Riviera Section Cmty. Club, 137 Wn. App. 665, 681, 151 P.3d 1038 (2007).

Washington's privacy act provides, in relevant part:

> (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
>
> (a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

> (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

RCW 9.73.030(1). Violation of the privacy act is a gross misdemeanor, and is also actionable in tort. RCW 9.73.060, .080. "We engage in a four-pronged analysis to determine whether an individual has violated the Act." State v. Roden, 169 Wn. App. 59, 64, 279 P.3d 461 (citing State v. Christensen, 153 Wn.2d 186, 192, 102 P.3d 789 (2004)), review granted, 175 Wn.2d 1022, 291 P.3d 253 (2012). There must be proof of, "(1) a private communication transmitted by a device, which was (2) intercepted by use of (3) a device designed to record and/or transmit, (4) without the consent of all parties to the private communication." Christensen, 153 Wn.2d at 192.

Here, only the first element, whether the conversation was private, is at issue. "[T]he question of whether a particular communication is private is generally a question of fact, but one that may be decided as a question of law if the facts are undisputed." Townsend, 147 Wn.2d at 673 (citing Clark, 129 Wn.2d at 225). Although the privacy act does not define "private," our Supreme Court has "adopted the Webster's Third New International Dictionary (1969) definition of 'private' as "'belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.'" Lewis v. Dep't of Licensing, 157 Wn.2d 446, 458, 139 P.3d 1078

(2006) (alterations in original) (internal quotation marks omitted) (quoting Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992)). A communication is private within the meaning of the privacy act only "'(1) when parties manifest a subjective intention that it be private and (2) where that expectation [of privacy] is reasonable.'" State v. Modica, 164 Wn.2d 83, 88, 186 P.3d 1062 (2008) (quoting Christensen, 153 Wn.2d at 193). A court will "generally presume that conversations between two parties" over the telephone "are intended to be private." Modica, 164 Wn.2d at 89.

Here, it is disputed whether Dillon manifested a subjective intention that the conversations were private. Dillon stated repeatedly during the August 25 call, and again during the September 16 call, that he was concerned about protecting himself from Akrie. Dillon later submitted a declaration to the trial court asserting that he intended for the conversations to be private, and would not have called Grant and Kennan had he thought otherwise. Given that Dillon later told Akrie about the conversations, it is possible that Dillon did not actually intend for the conversations to be private.[15] However, on summary judgment, the facts must be viewed in the light most favorable to Dillon, the nonmoving party. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Therefore, a triable question of fact exists as to whether Dillon subjectively intended the conversations to be private. The trial court erred by ruling as a matter of law that Dillon had no such intent.

---

[15] Significantly, and militating in Dillon's favor, "[t]he relevant time for assessing the [plaintiff's] intent and reasonable expectations is at the time of the conversation," not afterward. Clark, 129 Wn.2d at 228.

- 13 -

However, summary judgment would still have been appropriate if Dillon's subjective intent was not reasonable as a matter of law. See Modica, 164 Wn.2d at 88 (A "'communication is private where . . . that expectation [of privacy] is reasonable.'" (quoting Christiansen, 153 Wn.2d at 193)). Factors bearing on the reasonableness of an expectation of privacy include "(1) duration and subject matter of the conversation, (2) location of conversation and presence or potential presence of a third party, and (3) role of the nonconsenting party and his or her relationship to the consenting party." Lewis, 157 Wn.2d at 458-59 (citing Clark, 129 Wn.2d at 225-27).

Here, the second factor weighs in favor of Dillon. Dillon spoke with Grant and Kennan over the telephone and had no way of knowing if the conversation was being transcribed without being so told. Grant and Kennan were speaking from DWT offices, a place where one would not expect third parties to be present. Although Grant informed Dillon that "Thad" was present during the first call, Grant disingenuously introduced Byrd as if he were a DWT employee "taking notes," not a third party transcribing the conversation. Even worse, Grant and Kennan never told Dillon about the presence of another person during the second call.

The third factor, on the other hand, weighs in favor of SDR. Grant and Kennan represented T-Mobile, the party adverse to Dillon's former employer in the federal court action. Dillon was aware of the ongoing litigation and Grant's and Kennan's role in it, and purposely divulged information that he knew would benefit T-Mobile.

As to the first factor, the aspect of the subject matter is in dispute.[16] Dillon urges this court to distinguish between the conversation itself and the content of the conversation when determining whether a conversation is "private" for purposes of the act. SDR, citing Modica, asserts that this distinction only matters when one party uses the other as a "private messenger." However, Modica says nothing about "private messengers." To the contrary, the Modica court specifically stated that "the mere fact that a portion of the conversation is intended to be passed on does not mean a call is not private." 164 Wn.2d at 89-90. Instead, privacy "must be determined from the totality of the circumstances." Modica, 164 Wn.2d at 90. The Modica court held that although Modica and his grandmother might have intended their conversation to be private, that intent was not reasonable. 164 Wn.2d at 88. This was so, the court held, because Modica was in jail at the time and both parties "knew they were being recorded and that someone might listen to those recordings." Modica, 164 Wn.2d at 88.

The State in that case asserted that because Modica intended for his grandmother to relay messages to his wife, Modica's conversations with his grandmother could not be private. Modica, 164 Wn.2d at 89. The court explicitly rejected this argument. Modica, 164 Wn.2d at 89. In doing so, the court contrasted Modica's conversation with the conversation in State v. Forrester, 21 Wn. App. 855, 587 P.2d 179 (1978). Forrester called the police and confessed to a murder, then stated that unless he was given $10,000, he would kill again.

---

[16] The duration of the calls weigh in Dillon's favor. The first conversation lasted approximately 80 minutes and the second lasted approximately 50 minutes. These were not merely brief exchanges on the street, as in Clark, 129 Wn.2d at 230-31.

Modica, 164 Wn.2d at 89 (citing Forrester, 21 Wn. App. at 861-62). In Forrester, the court had found that the conversation was not private because "the caller was using the telephone to attempt the commission of a crime and to threaten the commission of other murders if his demands were not met." 21 Wn. App. at 862. Notably, the Forrester court had contrasted its case with State v. Wanrow, 88 Wn.2d 221, 559 P.2d 548 (1977), in which the court found that even where the caller reported the commission of a crime, the conversation was private.[17] Forrester, 21 Wn. App. at 862.

Dillon's situation is not comparable to that set forth in Forrester. Dillon did not make any threats or demand money; rather, he described T-Mobile's and NetLogix's attempts to do so. Nor is Dillon's situation comparable to that of Modica, who was an inmate at the time of his conversation[18] and knew that he was being recorded. Modica, 164 Wn.2d at 88. Simply because Dillon was divulging information pertinent to a civil suit does not mean that Dillon's expectation of privacy was unreasonable as a matter of law. Unlike in criminal cases, the parties to a civil suit may take the deposition of any potential witness.[19] CR 30(a). Additionally, attorneys may and, indeed, in this case did,

---

[17] The legislature has since amended the privacy act to exempt telephone calls wherein someone reports a crime. RCW 9.73.030(2)(a).

[18] Inmates automatically have a reduced expectation of privacy. Modica, 164 Wn.2d at 88.

[19] For this reason, State v. Mankin, 158 Wn. App. 111, 241 P.3d 421 (2010), cited by SDR, is inapposite. In Mankin, the defendant's attorney attempted to interview three police officers involved in his client's criminal case. 158 Wn. App. at 115. When the officers refused to allow defense counsel to record them, defense counsel terminated the interviews. Mankin, 158 Wn. App. at 115. Mankin moved to depose the officers, asserting that because the interviews were not private, the officers had no basis under the privacy act for their refusal. Mankin, 158 Wn. App. at 115. The trial court ruled that the conversations were not private and granted

ask someone with personal knowledge of relevant facts to sign a written declaration attesting to those facts. GR 13(a). Given these alternate, legitimate means of obtaining relevant evidence, it is not, as a matter of law, unreasonable for a potential witness to expect that his initial conversation with a party's attorneys would be private. Thus, the first factor in its entirety also favors Dillon.

With the balance of the three factors in Dillon's favor, triable questions of fact exist as to whether Dillon subjectively and reasonably believed that his conversations with Grant and Kennan were private. The trial court erred by holding, as a matter of law, that the conversations were not private.

### III

SDR contends that we should affirm the trial court's grant of summary judgment on the basis of collateral estoppel. This is so, they assert, because the federal court in <u>Volcan Grp.</u> held that the conversations were not private and that no violation of the privacy act had occurred. 940 F.Supp.2d at 1338. We disagree.

Collateral estoppel, otherwise known as issue preclusion, "'prevents relitigation of an issue after the party estopped has had a full and fair opportunity

---

Mankin's motion. <u>Mankin</u>, 158 Wn. App. at 116. On appeal, Division Two of this court held that the officers had no reasonable subjective expectation of privacy in their interviews. <u>Mankin</u>, 158 Wn. App. at 118. In so holding, the court stated that "the communications involved defense investigation of actions by public employees . . . performing their jobs, which investigation led to the public criminal prosecution of Mankin" and that defense counsel's "notes and interview summaries could 'be subject to disclosure at trial if counsel or the investigator should be called as a witness by the defense for the purpose of impeaching the testimony given by a previously interviewed prosecution witness.'" <u>Mankin</u>, 158 Wn. App. at 118 (quoting <u>State v. Yates</u>, 111 Wn.2d 793, 796, 765 P.2d 291 (1988)). Unlike in civil matters, depositions are permitted in criminal matters only in one of three circumstances and only upon order of the court. CrR 4.6(a). Moreover, the <u>Mankin</u> court explained that "the public nature of the officers' role was an important factor" in its holding. 158 Wn. App. at 120. This factor is not present in this case.

to present its case.'" Lemond v. Dep't of Licensing, 143 Wn. App. 797, 803-04,

180 P.3d 829 (2008) (internal quotation marks omitted) (quoting Barr v. Day, 124

Wn.2d 318, 324-25, 879 P.2d 912 (1994)). In order for collateral estoppel to

apply, the following four elements must be present:

> "(1) identical issues; (2) a final judgment on the merits; (3) the party
> against whom the plea is asserted must have been a party to or in
> privity with a party to the prior adjudication; and (4) application of
> the doctrine must not work an injustice on the party against whom
> the doctrine is to be applied."

Reninger v. Dep't of Corrs., 134 Wn.2d 437, 449, 951 P.2d 782 (1998) (quoting

Southcenter Joint Venture v. Nat'l Democratic Policy Comm., 113 Wn.2d 413,

418, 780 P.2d 1282 (1989)). The party seeking the application of collateral

estoppel has the burden of proof and "[f]ailure to establish any one element is

fatal to the proponent's claim." Lopez-Vasquez v. Dep't of Labor & Indus.,168

Wn. App. 341, 345, 276 P.3d 354 (2012).

The primary issue in the federal court action was whether evidence had

been destroyed and, if so, whether such spoliation warranted dismissal of

NetLogix's contract claim. See Volcan Grp., 940 F.Supp.2d at 1328. As such,

the focus of the federal court's evidentiary hearing was on the substance of the

telephone conversations. In its opinion, the federal court stated that it "does not

believe" that SDR violated the privacy act. Volcan Grp., 940 F.Supp.2d at 1338.

The court's belief is not a final judgment on the merits. The issue in this case

was not fully and fairly litigated in the federal court action.

Nor is this a case in which the party against whom collateral estoppel is

asserted was in privity with a party to the prior adjudication. Dillon was not a

party to the federal court action. Moreover, at the time of the conversations at issue, Dillon was no longer employed by NetLogix.

Nevertheless, SDR asserts that Dillon was in privity with NetLogix because he was a participant in NetLogix's "fraud" and stood to benefit financially from an outcome favorable to NetLogix in the federal court lawsuit. SDR cites to Garcia v. Wilson, 63 Wn. App. 516, 820 P.2d 964 (1991), for the proposition that Dillon, despite his nonparty status, was "virtually represented" by NetLogix in the federal court action. In Garcia, however, we listed a number of factors to consider when determining whether the doctrine of virtual representation applies: (1) "whether the nonparty in some way participated in the former adjudication, for instance as a witness"; (2) "[t]he issue must have been fully and fairly litigated at the former adjudication"; (3) "the evidence and testimony will be identical to that presented in the former adjudication"; and (4) "there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so." 63 Wn. App. at 521.

The fourth factor is notably missing in this case. The separation of Dillon's state court privacy act suit and the federal court suit was not the product of manipulation or tactical maneuvering. The federal court suit was a contract dispute between two companies; Dillon lacked a basis to seek to intervene as a party.[20] Moreover, Dillon lacked standing to challenge the federal court's

---

[20] Additionally, the defendants in the two cases are completely different, and the alleged privacy act violation did not occur until well after the federal court lawsuit was filed.

determination that his conversations were not private. Cf. Olympic Tug & Barge, Inc. v. Dep't. of Revenue, 163 Wn. App. 298, 303, 259 P.3d 338 (2011) ("A party may not be denied the chance to litigate an issue if it was statutorily denied an opportunity to appeal."), review denied, 173 Wn.2d 1021 (2012); State Farm Mut. Auto. Ins. Co. v. Avery, 114 Wn. App. 299, 309, 57 P.3d 300 (2002) (same). Accordingly, SDR failed to establish that Dillon was in privity with NetLogix, such that collateral estoppel would bar Dillon's privacy act claims. The trial court properly declined to apply collateral estoppel so as to bar Dillon's claims.

IV

Dillon next contends that the trial court erred, in two respects, in granting SDR's motion to strike his privacy act claims pursuant to the anti-SLAPP statute. Dillon asserts, first, that the trial court erred when it conducted the SLAPP hearing in an order reversed from the requirements of the anti-SLAPP statute, and second, that the trial court erred by holding that SDR met its burden of proving that its conduct was protected by the anti-SLAPP statute. We agree with both assertions.

This appeal presents issues of first impression regarding Washington's anti-SLAPP statute. In 2010, the legislature amended the anti-SLAPP statute by adding RCW 4.24.525 to address "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Laws of 2010, ch. 118, § 1 (1)(a). Because the "costs associated with defending such suits can deter individuals and entities from fully exercising their constitutional rights to petition the government and to speak out

on public issues," the statute provides "an efficient, uniform, and comprehensive method for speedy adjudication" with the available award of "attorneys' fees, costs, and additional relief where appropriate." Laws of 2010, ch. 118, § 1 (1)(c), (2)(b), (c).

Under the anti-SLAPP statute, a party may bring a special motion to strike "any claim that is based on an action involving public participation and petition." RCW 4.24.525(4)(a). In deciding an anti-SLAPP motion, a court must follow a two step process. A party moving to strike a claim has the initial burden of showing by a preponderance of the evidence that the claim targets activity "involving public participation and petition," as defined in RCW 4.24.525(2). U.S. Mission Corp. v. KIRO TV, Inc., 172 Wn. App 767, 782-783, 292 P.3d 137, review denied, 177 Wn.2d 1014 (2013). If the moving party meets this burden, the burden shifts to the responding party "to establish by clear and convincing evidence a probability of prevailing on the claim." RCW 4.24.525(4)(b). If the responding party fails to meet its burden, the court must grant the motion, dismiss the offending claim, and award the moving party statutory damages of $10,000 in addition to attorney fees and costs. RCW 4.24.525(6)(a)(i),(ii).

A

Dillon contends that the trial court erred when it shifted the burden of proof to him to show a probability of prevailing on his claims before SDR had met its initial burden. We agree.

The anti-SLAPP statute mandates that:

> All discovery and *any pending hearings or motions* in the action *shall be stayed* upon the filing of a special motion to strike under subsection (4) of this section. The stay of discovery shall remain in effect until the entry of the order ruling on the motion. Notwithstanding the stay imposed by this subsection, the court, on motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted.

RCW 4.24.525(5)(c) (emphasis added). Here, the trial court heard argument and ruled on the motion for summary judgment before it heard argument on the anti-SLAPP motion. SDR never attempted to establish, nor did the trial court find, good cause to lift the stay on all pending motions. Although the procedure for deciding anti-SLAPP motions is similar to that used in deciding a motion for summary judgment, "'[a] motion to strike under [the anti-SLAPP statute] is not a substitute for a motion for . . . summary judgment.'" Tichinin v. City of Morgan Hill, 177 Cal.App.4th 1049, 1062, 99 Cal.Rptr.3d 661 (Cal.App. 2009) (alteration in original) (quoting Wilbanks v. Wolk, 121 Cal.App.4th 883, 905, 17 Cal.Rptr.3d 497 (Cal.App. 2004)).[21] The trial court erred by failing to stay the motion for summary judgment pending determination of the merits of the anti-SLAPP motion.

---

[21] Washington's anti-SLAPP statute mirrors California's anti-SLAPP statute. Therefore, in most circumstances, California cases may be considered as persuasive authority when interpreting RCW 4.24.525. See City of Longview v. Wallin, 174 Wn. App. 763, 776 n.11, 301 P.3d 45, review denied, 178 Wn.2d 1020 (2013).; Aronson v. Dog Eat Dog Films, Inc., 738 F.Supp.2d 1104, 1110 (W.D.Wash. 2010); compare RCW 4.24.525 with Cal. Civ. Proc. Code § 425.16.

B

i

The procedural error committed by the trial court does not warrant appellate relief if the error was harmless. In this case, the error would be harmless if SDR proved by a preponderance of the evidence that Dillon's claims were based on actions involving public participation and petition and if Dillon failed to show by clear and convincing evidence a probability of prevailing on his privacy act claim. See RCW 4.24.525(4)(b).

The anti-SLAPP statute defines "an action involving public participation and petition" as follows:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;
>
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;
>
> (c) Any oral statement made, or written statement or other document submitted, that is reasonably likely to encourage or to enlist public participation in an effort to effect consideration or review of an issue in a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;
>
> (d) Any oral statement made, or written statement or other document submitted, in a place open to the public or a public forum in connection with an issue of public concern; or
>
> (e) Any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition.

RCW 4.24.525(2). The trial court found that SDR proved by a preponderance of the evidence that its actions were "lawful activity in connection with a judicial proceeding," and thus constituted actions "involving public participation and petition." See RCW 4.24.525(2)(b), (e). On appeal, SDR also asserts that its actions of recording Dillon's telephone calls were "in a judicial proceeding" and "in furtherance of the exercise of the constitutional right of petition." See RCW 4.24.525(2)(a), (e).

ii

We review the grant or denial of an anti-SLAPP motion de novo.[22] City of Longview v. Wallin, 174 Wn. App. 763, 776, 301 P.3d 45, review denied, 178 Wn.2d 1020 (2013). This case also involves issues of statutory interpretation, which we review de novo. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

iii

The trial court ruled that SDR's actions were "action[s] involving public participation and petition," because "the activity that is the subject of the privacy act claim was lawful activity in connection with a judicial proceeding." This was

---

[22] Our colleagues in Division Two recently explained why the de novo standard of review is appropriate for decisions on anti-SLAPP motions:

> No Washington court has explicitly stated the standard of review for the trial court's decision to grant or deny a special motion to strike under RCW 4.24.525. But because California has a similar statute, California cases are persuasive authorities for interpreting the Washington statute. See Aronson v. Dog Eat Dog Films, Inc., 738 F.Supp.2d 1104, 1110 (W.D.Wash. 2010) (citing "California law as persuasive authority for interpreting" RCW 4.24.525). California courts review an order granting or denying a motion to strike under California's statute de novo. Flatley v. Mauro, 39 Cal.4th 299, 325, 139 P.3d 2, 46 Cal.Rptr.3d 606 (2006).

Wallin, 174 Wn. App. at 776 n.11. Additionally, anti-SLAPP motions are procedurally similar to summary judgment motions, Gerbosi, 193 Cal.App.4th at 444, which this court reviews de novo. Green, 137 Wn. App. at 681.

so, the trial court ruled, because "the meeting that took place in Mr. Grant's office was certainly in connection with a judicial proceeding" and SDR's activity was not criminal. "Lawful activity in connection with a judicial proceeding" is not explicitly part of the definition of "an action involving public participation and petition," but rather combines language from two separate subsections of the definition.[23] RCW 4.24.525(2)(b), (e). However, the trial court's ruling is not supported by either subsection.

With respect to subsection (2)(b), the trial court's ruling fails to account for the first clause of the subsection—"[a]ny oral statement made, or written statement or other document submitted." RCW 4.24.525(2)(b). "[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant." Martinez v. Metabolife Intern., Inc., 113 Cal.App.4th 181, 188, 6 Cal.Rptr.3d 494 (Cal.App. 2003) (citing Paul v. Friedman, 95 Cal.App.4th 853, 866, 117 Cal.Rptr.2d 82 (Cal.App. 2002)). Rather,

> it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected

---

[23] RCW 4.24.525(2)(b) reads, "As used in this section, an 'action involving public participation and petition' includes: . . . (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law."

RCW 4.24.525(2)(e) reads, "As used in this section, an 'action involving public participation and petition' includes: . . . (e) Any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition."

In its ruling on Dillon's motion for reconsideration, the trial court cited to RCW 4.24.525(2)(e), focusing solely on the phrase "[a]ny other lawful conduct."

activity, collateral allusions to protected activity should not subject
the cause of action to the anti-SLAPP statute.

Martinez, 113 Cal.App.4th at 188 (citation omitted).  Here, the principal thrust of

Dillon's claims is SDR's acts of transcribing Dillon's telephone calls without his

knowledge, not SDR's subsequent submission of the transcripts (or excerpts

therefrom) to the federal court.

SDR's acts of transcribing Dillon's telephone calls cannot reasonably be

categorized as protected "statements."

> "[F]reedom of speech" means more than simply the right to talk and
> to write. It is possible to find some kernel of expression in almost
> every activity a person undertakes—for example, walking down the
> street or meeting one's friends at a shopping mall—but such a
> kernel is not sufficient to bring the activity within the protection of
> the First Amendment.

City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S. Ct. 1591, 104 L. Ed. 2d 18

(1989).  Accordingly, not all conduct can be treated as a "statement."  DCR, Inc.

v. Pierce County, 92 Wn. App. 660, 671, 964 P.2d 380 (1998).  Although there

are numerous statements contained in the transcripts of the calls, this does not

transform the act of transcribing the conversation into a statement as well.[24]  The

act of transcription does not express anything, nor is it intended to convey any

sort of message.  Simply put, SDR's acts of transcription are not statements.  Cf.

City of Seattle v. McConahy, 86 Wn. App. 557, 567-69, 937 P.2d 1133 (1997)

("sitting does not have inherent expressive value" and thus is not conduct

protected by the First Amendment).  As SDR's acts are not statements,

---

[24] Moreover, the majority of the statements made during the call were uttered by Dillon, not by Grant, Kennan, or a transcriptionist.  Dillon's utterances are not SDR's actions.  They are Dillon's.

subsection (2)(b) of RCW 4.24.525, defining "an action involving public participation and petition," is not applicable.[25]

iv

Nevertheless, SDR contends that the gravamen of Dillon's claim was actually SDR's act of filing the transcripts (or excerpts therefrom) in federal court. This is so, SDR contends, because Dillon requested "actual damages" in his complaint and he could not have been damaged without the act of filing. Therefore, SDR asserts, notwithstanding the language of Dillon's complaint, he must truly be claiming that the act of filing the transcripts constituted a violation of the privacy act.

SDR's assertion is factually incorrect. Dillon quite clearly alleged in his complaint that the violations of the privacy act were SDR's acts of transcribing the telephone calls without his knowledge. Dillon's complaint does not even mention that the transcripts were filed in federal court. Dillon's prayer for relief requests "[d]amages subject to the MAR $50,000 limits of mandatory arbitration and pursuant to the schedule specified in RCW 9.73.060 including one hundred dollars a day for each violation against each defendant, reasonable attorney's fees and costs, actual damages and general damages." This language simply

---

[25] SDR contends that the trial court's ruling may, in the alternative, be affirmed on the ground that their actions constituted "an action involving public participation and petition" as defined in subsection (2)(a) of RCW 4.24.525. However, subsection (2)(a) also includes the phrase "[a]ny oral statement made, or written statement or other document submitted." RCW 4.24.525(2)(a). SDR's actions are not covered by this subsection for the same reason that they are not covered by subsection (2)(b).

- 27 -

reiterates the remedies provided by RCW 9.73.060 and does not alter the nature of Dillon's complaint.[26]

The principal authority cited by SDR on this question, Kearney v. Kearney, 95 Wn. App. 405, 974 P.2d 872 (1999), does not dictate otherwise. The Kearney court did not address damages. Rather, Kearney addressed liability, holding that "RCW 9.73.050 does not create civil liability for filing information obtained in violation of the privacy act." 95 Wn. App. at 415. Furthermore, the defendants in that case disseminated private conversations that *someone else* recorded. Kearney, 95 Wn. App. at 411-12. Such is not the case herein. Kearney is inapposite and SDR's reliance upon it is unavailing.

V

The trial court's ruling is also not supported by subsection (2)(e) defining "an action involving public participation and petition." RCW 4.24.525(2)(e) defines "an action involving public participation and petition" as "[a]ny other lawful conduct . . . in furtherance of the exercise of the constitutional right of petition." SDR contends that their actions involved the right of petition because the right of petition includes the right to bring a lawsuit in court. For his part, Dillon asserts that SDR's actions do not fall under this definition because SDR's actions were not lawful. Relying on Gerbosi v. Gaims, Weil, West & Epstein, LLP, 193 Cal.App.4th 435, 445, 122 Cal.Rptr.3d 73 (Cal.App. 2011), Dillon avers that allegations of criminal activity bar application of the anti-SLAPP statute. We

---

[26] To the extent that SDR wished to strike the potential remedy of actual damages from the complaint, bringing an anti-SLAPP motion was not the proper method of doing so.

decide this contention on another basis, holding that SDR's actions did not constitute "the exercise of the constitutional right of petition."

Subsection (2)(e) of the anti-SLAPP statute refers to conduct "in furtherance of the exercise of *the* constitutional right of petition." RCW 4.24.525(2)(e) (emphasis added). The right of petition is referenced as a singular thing. "Use of a definite rather than indefinite article is a recognized indication of statutory meaning." Dep't of Ecology v. City of Spokane Valley, 167 Wn. App. 952, 965, 275 P.3d 367, review denied, 175 Wn.2d 1015 (2012). "'The rules of grammar . . . provide that the definite article, 'the', is used 'before nouns of which there is only one or which are considered as one.'"" Dep't of Ecology, 167 Wn. App. at 965 (alteration in original) (internal quotation marks omitted) (quoting State v. Neher, 52 Wn. App. 298, 300, 759 P.2d 475 (1988), aff'd, 112 Wn.2d 347, 771 P.2d 330 (1989)). Thus, when RCW 4.24.525(2)(e) refers to "the constitutional right to petition," it is referencing a particular and singular right. The question for us, then, is where this singular right is found.

The first amendment to the United States Constitution contains a guarantee of a right to petition the government. U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom . . . to petition the government for a redress of grievances."). Similarly, the Washington Constitution provides, in article I, section 4 that, "The right of petition . . . for the common good shall never be abridged." WASH. CONST. art. I, § 4. Given that we have determined that RCW 4.24.525(2)(e), by its express language, applies only

to "*the* right to petition," the question is: does this statute reference the federal constitution or does it reference the state constitution?

We have only two choices. On the one hand, we may conclude that our state legislature sought to legislate with reference to the federal constitution—to the exclusion of the state constitution. On the other hand, we may conclude that the state legislature sought to legislate with reference to the state constitution—to the exclusion of the federal constitution.

In reaching our decision, we must consider the context of the legislation. The anti-SLAPP statute is a state statute, not a federal statute. The anti-SLAPP statute limits access to state courts, not federal courts. The Washington legislature is a creature of the state constitution, not the federal constitution. WASH. CONST. art. II, § 1. The Washington legislature's power to legislate is derived from the state constitution, not the federal constitution. WASH. CONST. art. II, § 1.

On balance, it is illogical to assume that, in passing RCW 4.24.525(2)(e), the Washington legislature sought to legislate by reference to the federal constitution, to the exclusion of the state constitution. On the contrary, it is logical to assume that the Washington legislature chose to legislate with reference to the state constitution, to the exclusion of the federal constitution. Indeed, it is more logical that the Washington legislature sought to vindicate a state constitutional right in limiting access to Washington's courts than it is to conclude that it sought to vindicate a federal right—to the exclusion of the state constitutional right—in limiting access to Washington's courts. Congress, of

course, can pass laws designed to vindicate federal constitutional rights. The Washington legislature would be well aware of this. But only the Washington legislature can pass such laws designed to vindicate Washington state constitutional rights. The Washington legislature is presumably also well aware of this.

Thus, it is the state constitutional right to petition, as set forth in article I, section 4, that is referenced in RCW 4.24.525(2)(e).

Further support for our conclusion that "*the* right of petition" referenced in the statute refers to the state constitutional right is found in the legislative history of the act. As previously noted, Washington's anti-SLAPP statute was modeled after that of California. California's statute, however, provides that it applies to actions "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution." Cal. Civ. Proc. Code § 425.16(b)(1). The California statute, thus, refers to *both* the federal and state rights to petition. In passing Washington's version of the act, however, our legislature referred only to "the constitutional right of petition." RCW 4.24.525(2)(e). We presume this difference to be intentional: "when the model act in an area of law contains a certain provision, but the legislature fails to adopt such a provision, our courts conclude that the legislature intended to reject the provision." Lundberg ex rel. Orient Found. v. Coleman, 115 Wn. App. 172, 177-78, 60 P.3d 595 (2002). Thus, we find further support for our conclusion that the legislature did not intend for the statutory phrase "the constitutional right to petition" to refer to both the state and federal constitutions.

- 31 -

vi

This conclusion is significant to our decision today. The federal right of petition includes a right to access the courts. Borough of Duryea, Pa. v. Guarnieri, __U.S.__, 131 S. Ct. 2488, 2494, 180 L. Ed. 2d 408 (2011); In re Primus, 436 U.S. 412, 426, 98 S. Ct. 1893, 56 L. Ed. 2d 417 (1978); In re Addleman, 139 Wn.2d 751, 753-54, 991 P.2d 1123 (2000). To the contrary, the article I, section 4 right of petition includes no such right.

This question has been extensively litigated before our Supreme Court. When first presented with the question, the Supreme Court suggested that article I, section 4 protects access to the courts. Carter v. Univ. of Wash., 85 Wn.2d 391, 398-99, 536 P.2d 618 (1975) (plurality opinion). One year later, however, our Supreme Court explicitly held to the contrary.

> Carter v. University of Washington, supra, should also be overruled insofar as it suggested that article 1, section 4, protects a right of access to the courts. This section reads: "The right of petition and of the people peaceably to assemble for the common good shall never be abridged." This provision obviously has reference to the exercise of political rights. The language of the constitution, like that of statutes, is to be given its common and ordinary meaning. It requires an awkward and unnatural construction of this language to make it applicable to the judicial process. Access to the courts is amply and expressly protected by other provisions.

Hous. Auth. of King County v. Saylors, 87 Wn.2d 732, 741-42, 557 P.2d 321 (1976).

Thus, our Supreme Court explicitly held that the right addressed in article I, section 4 is a political right that does not encompass within its purview the right to access courts.

Where, then, is the right to access courts guaranteed in the Washington Constitution? Our Supreme Court provided the answer in <u>John Doe v. Puget Sound Blood Center</u>, 117 Wn.2d 772, 819 P.2d 370 (1991). In the <u>John Doe</u> case, the court noted that, "Plaintiff has a right of access to the courts" and attributed the existence of that right to article I, section 10 of the state constitution.[27] 117 Wn.2d at 780. In reaching its decision, the court explained:

> In <u>Carter v. UW</u>, 85 Wn.2d 391, 399, 536 P.2d 618 (1975), the plurality opinion held that the right of access to the courts was a fundamental right. The plurality opinion relied on Const. art. 1, § 4, the right of petition, and Const. art. 1, § 12, privileges and immunities. However, the court soon considered the question again in <u>Housing Auth. v. Saylors</u>, 87 Wn.2d 732, 557 P.2d 321 (1976). The <u>Saylors</u> court held that reliance upon the cited constitutional provisions was in error. However, the important point in <u>Saylors</u> is the statement that "[a]ccess to the courts is amply and expressly protected by other provisions." <u>Saylors</u>, at 742. Unfortunately, the court did not explore the rationale for its conclusion.

<u>John Doe</u>, 117 Wn.2d at 781-82.

Thus, the Supreme Court acknowledged that the right of petition, set forth in article I, section 4, does not encompass a right of access to the courts. Instead, it found that such a right is grounded in article I, section 10. <u>John Doe</u>, 111 Wn.2d at 780.

To summarize, in 1976, our Supreme Court determined that the right to petition did not include a right of access to the courts. Fifteen years later, in 1991, the existence of the right of access to the courts was attributed to article I, section 10.

---

[27] "Justice in all cases shall be administered openly, and without unnecessary delay." WASH. CONST. art. I, § 10.

Eighteen years later, this position was reaffirmed. In <u>Putman v. Wenatchee Valley Medical Center</u>, 166 Wn.2d 974, 216 P.3d 374 (2009), the court struck down RCW 7.70.150's requirement that a certificate of merit be filed in medical malpractice cases. In reaching its decision, the court noted:

> The people have a right of access to courts; indeed, it is "the bedrock foundation upon which rest all the people's rights and obligations." <u>John Doe v. Puget Sound Blood Ctr.</u>, 117 Wn.2d 772, 780, 819 P.2d 370 (1991).

<u>Putman</u>, 166 Wn.2d at 979.

In <u>Putman</u>'s discussion of the right of access to the courts, the Supreme Court's opinion cited <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803), once, while citing <u>John Doe</u> five times. No other authority was cited. Clearly, this reaffirms that our Supreme Court considers <u>John Doe</u> to still be "good law."

Thus, the right of access to the courts is found in article I, section 10, not in article 1, section 4. Accordingly, the right to petition, mentioned in RCW 4.24.525(2)(e), does not encompass a right of access to the courts.[28] Therefore,

---

[28] We are aware that in two cases our Supreme Court has used very broad language to opine that the right to petition set forth in article I, section 4 should be interpreted consistently with the federal first amendment right to petition. <u>See</u> <u>Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake</u>, 150 Wn.2d 791, 815, 83 P.3d 419 (2004); <u>Richmond v. Thompson</u>, 130 Wn.2d 368, 383, 922 P.2d 1343 (1996). We do not consider the broad statements in those cases as controlling this case for the following reasons:

1. Neither <u>Grant County</u> nor <u>Richmond</u> dealt with the question of the origin of the right of access to the courts. <u>Grant County</u> dealt with a dispute over an annexation petition and <u>Richmond</u> was a defamation case. Thus, the issue in this case was not present in either case.

2. Both <u>Grant County</u> (2004) and <u>Richmond</u> (1996) were decided after both <u>John Doe</u> (1991) and <u>Saylors</u> (1976). In neither <u>Grant County</u> nor <u>Richmond</u> did the Supreme Court even mention <u>Saylors</u> or <u>John Doe</u>. In neither <u>Grant County</u> nor <u>Richmond</u> does the Supreme Court purport to overrule <u>Saylors</u> or <u>John Doe</u>. We adhere to the principle that the Supreme Court does not overrule its own decisions on clear rules of law sub silentio. <u>Lunsford v. Saberhagen Holdings, Inc.</u>, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009).

the trial court erred by ruling that SDR's actions in filing the transcripts and excerpts therefrom with the federal court was protected activity encompassed within RCW 4.24.525(2)(e).

In addition, the language of the statute's subsections supports our conclusion. The legislature did not use the phrase "judicial proceeding" in subsection (2)(e) defining "action involving public participation and petition" as it did in subsections (2)(a) and (b). We presume that this omission was intentional. See Densley v. Dep't of Retire. Sys., 162 Wn.2d 210, 219, 173 P.3d 885 (2007) ("When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings."). Furthermore, "'[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" G-P Gypsum Corp. v. Dep't of Revenue, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (internal quotation marks omitted) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). If "[a]ny other lawful conduct . . . in furtherance of the exercise of the constitutional right of petition" encompassed all actions that occurred in or in connection with a judicial proceeding, then portions of RCW 4.24.525(2)(a) and (b) would be rendered superfluous. We should not read a statute in such a manner. Accordingly, we do not read RCW 4.24.525(2)(e) to encompass SDR's actions of recording telephone conversations, even though the transcripts (or portions thereof) of those

---

3. In the most recent case of all, Putman (2009), the Supreme Court reaffirmed the validity of its decision in John Doe.

conversations were later filed in court in connection with a judicial proceeding. The trial court erred by ruling to the contrary.

vii

But what if we are wrong, and our legislature *did* intend for the phrase "the constitutional right of petition" to refer to both the state and federal constitutional rights to petition? In that event, our decision would be the same.

The United States Constitution protects an individual's right "to petition the government for a redress of grievances." U.S. CONST. amend. I. As previously mentioned, the First Amendment right to petition includes the right to access the court system. Guarnieri, 131 S. Ct. at 2494; Primus, 436 U.S. at 426; Addleman, 139 Wn.2d at 753-54.

Under California law, which explicitly includes the federal constitutional right to petition within its ambit, "[t]he anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation," including the gathering of evidence. Kolar v. Donahue, McIntosh & Hammerton, 145 Cal.App.4th 1532, 1537, 52 Cal.Rptr.3d 712 (Cal.App. 2006) (citing Kashian v. Harriman, 98 Cal.App.4th 892, 908, 120 Cal.Rptr.2d 576 (Cal.App. 2002)). California courts have held that actions undertaken by attorneys when representing a client are in furtherance of the attorney's right of petition, as well as that of the client. See e.g., Dowling v. Zimmerman, 85 Cal.App.4th 1400, 1418-20, 103 Cal.Rptr.2d 174 (Cal.App. 2001); cf. Briggs v. Eden Council for Hope & Opportunity, 19 Cal.4th 1106, 1116, 969 P.2d 564, 81 Cal.Rptr.2d 471 (1999) ("[T]he [anti-SLAPP] statute does not

require that a defendant moving to strike . . . demonstrate that its protected statements or writings were made *on its own behalf.*"). Furthermore, California courts hold that "public" does not modify "right to petition" as used in the anti-SLAPP statute, and therefore a lawsuit need not be on a public issue in order to trigger the statute. Navellier v. Sletten, 29 Cal.4th 82, 91-92, 52 P.3d 703, 124 Cal.Rptr.2d 530 (2002); Briggs, 19 Cal.4th at 1114.

Although gathering evidence may be an action "in furtherance of the right to petition" under California law, California courts nevertheless do not allow attorneys to gather evidence by any method they see fit. "Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by" the anti-SLAPP statute. Cal. Back Specialists Med. Grp. v. Rand, 160 Cal.App.4th 1032, 1037, 73 Cal.Rptr.3d 268 (Cal.App. 2008). "[A] lawyer may [not] employ the anti-SLAPP statute to strike [a] cause of action merely because he or she is a lawyer." Gerbosi, 193 Cal.App.4th at 445.

Here, SDR cannot meet its burden of proving that its actions were protected by the anti-SLAPP statute merely by showing that Dillon's complaint was filed after first amendment petitioning activity occurred or that his claims somehow relate to first amendment petitioning activity. Instead, the petitioning activity must actually give rise to and be the basis for the asserted liability. Equilon Enters. v. Consumer Cause, Inc., 29 Cal.4th 53, 66, 52 P.3d 685, 124 Cal.Rptr.2d 507 (2002) ("'[T]he act underlying the plaintiff's cause or the act which forms the basis for the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (quoting

ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1003,113 Cal.Rptr.2d 625 (Cal.App. 2001))). Dillon did not sue SDR because they gathered evidence. Rather, Dillon's claims are based on SDR's method of gathering evidence: transcribing telephone conversations that Dillon avers were private.[29] The act of recording is not itself protected speech or petitioning activity. As such, Dillon's claims do not fall within the ambit of the anti-SLAPP statute, even if we were to assume that it encompasses first amendment petitioning activity.

Two California cases support our holding. In Gerbosi, an attorney, Gaims, hired a private investigator, Pellicano, to investigate the ex-girlfriend, Finn, of his client, Pfeifer. 193 Cal.App.4th at 440. Pellicano installed a wiretap on Finn's telephone, and was eventually indicted on conspiracy and wiretapping charges for doing so. Gerbosi, 193 Cal.App.4th at 441. Finn and her neighbor, Gerbosi,[30] filed suit against Gaims, Pellicano, Pfeifer, and the telephone company for multiple statutory violations and torts arising from the wiretapping. Gerbosi, 193 Cal.App.4th at 441. Gaims filed anti-SLAPP motions to strike both Finn's and Gerbosi's complaints. Gerbosi, 193 Cal.App.4th at 442. The trial court denied both motions. Gerbosi, 193 Cal.App.4th at 442.

With respect to Gerbosi's claims, the California Court of Appeals held that the claims did not arise from any protected activity on the part of Gaims.

---

[29] Contrary to the trial court's analysis, the summary judgment ruling should not have had any bearing on the first step of the anti-SLAPP inquiry. SDR's claim that the conversations were not private, despite Dillon's assertions to the contrary, is "'more suited to the second step of an anti-SLAPP motion. A showing that a defendant did not do an alleged activity is not a showing that the alleged activity is a protected activity.'" Malin v. Singer, 217 Cal.App.4th 1283, 1304, 159 Cal.Rptr.3d 292 (Cal.App. 2013) (quoting Gerbosi, 193 Cal.App.4th at 446).
[30] Some of the telephone calls that Pellicano intercepted were private conversations between Finn and Gerbosi. Gerbosi, 193 Cal.App.4th at 441.

Gerbosi, 193 Cal.App.4th at 444. In so holding, the court stated, "Gaims's status as a lawyer,, unrelated to any representation of any client in relationship to Gerbosi does not bring Gaims under the protective umbrella for acts in furtherance of protected 'petitioning' activity." Gerbosi, 193 Cal.App.4th at 444. With respect to Finn's claims, the court held that those claims which alleged criminal conduct were not subject to the anti-SLAPP statute, because wiretapping is not "'protected by constitutional guarantees of free speech and petition.'" Gerbosi, 193 Cal.App.4th at 445-46 (quoting Flatley v. Mauro, 39 Cal.4th 299, 317, 46 Cal.Rptr.3d 606, 139 P.3d 2 (2006)). The court compared the case to Flatley, which held that California's anti-SLAPP statute "'cannot be invoked by a defendant whose *assertedly protected activity* is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition.'" Gerbosi, 193 Cal.App.4th at 445-46 (quoting Flatley, 39 Cal.4th at 317). The Gerbosi court held that "wiretapping in the course of representing a client," unlike writing a letter or making telephone calls on behalf of a client, could not be considered to be protected under any scenario. 193 Cal. App. 4th at 446. Thus, the court did not need to hold that Gaims's and Pellicano's actions were "illegal as a matter of law" in order to hold that the anti-SLAPP statute did not apply. Gerbosi, 193 Cal.App.4th at 446-47.

The California Court of Appeals reaffirmed Gerbosi in 2013. See Malin v. Singer, 217 Cal.App.4th 1283, 1302, 159 Cal.Rptr.3d 292 (Cal.App. 2013). In Malin, Malin filed suit against Arazm and Singer, Arazm's attorney, alleging a violation of civil rights and intentional and negligent infliction of emotional

distress. 217 Cal.App.4th at 1289. Malin alleged in his complaint that Arazm and Singer had instructed unknown third parties to retrieve his private communications and e-mail messages through the use of wiretapping and computer hacking. Malin, 217 Cal.App.4th at 1290. Arazm and Singer filed an anti-SLAPP motion against Malin for bringing claims purportedly based on Arazm's constitutional right to petition. Malin, 217 Cal.App.4th at 1290. As SDR does here, Arazm and Singer argued that "'the *plaintiff* has the burden to establish that the conduct was illegal as a matter of law.'" Malin, 217 Cal.App.4th at 1302. The California Court of Appeals held that this was *not* the plaintiff's burden. Malin, 217 Cal.App.4th at 1302. Rather, the court held,

> Arazm and Singer fail to meet their threshold burden of showing that Malin's civil rights claim is based on an act that constitutes protected activity within the meaning of the statute. In an attempt to do so, they urge the gravamen of Malin's cause of action arises from acts in furtherance of their right to conduct prelitigation investigation. They are incorrect. The *acts* underlying Malin's civil rights and related emotional distress causes of action are computer hacking and wiretapping. Those acts do not fit one of the categories of protected conduct defined by the Legislature in [the anti-SLAPP statute], and Arazm and Singer do not contend otherwise. As a result, they are not entitled to relief under the anti-SLAPP statute.

Malin, 217 Cal.App.4th at 1303.

Similarly, Dillon's claims are based on the acts of recording telephone conversations, not on SDR's use of the transcripts thereafter. As in Gerbosi and Malin, it is of little moment that the purpose of SDR's actions was to gather

evidence.[31] The recording of telephone conversations is not an action protected under the First Amendment and, accordingly, is not an "action involving public participation and petition." RCW 4.24.525(4)(a). Therefore, Dillon's claims are not "based on an action involving public participation and petition." See RCW 4.24.525(4)(a).

Policy considerations support our holding. In enacting the anti-SLAPP statute, the legislature found that "[i]t is in the public interest for citizens to participate in matters of public concern and provide information to public entities and other citizens on public issues that affect them without fear of reprisal through abuse of the judicial process." Laws of 2010, ch. 118, § 1 (1)(d). The legislature also sought to "[s]trike a balance between the rights of persons to file lawsuits and to trial by jury and the rights of persons to participate in matters of public concern." Laws of 2010, ch. 118, § 1 (2)(a). If "[a]ny other lawful conduct . . . in furtherance of the exercise of the constitutional right of petition" covered all means of gathering evidence, the anti-SLAPP statute would not strike any sort of balance; rather, it would elevate an attorney's ability to gather evidence above the right of persons to file lawsuits. Interpreting the statute in this manner would not only run contrary to the legislature's intent, but would also likely raise issues

---

[31] See also Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 168, 691 N.E.2d 935 (1998) (In an action for breach of a nondisclosure agreement and breach of fiduciary duty, Massachusetts' anti-SLAPP statute did not apply to statements made during a deposition, when the plaintiff alleged that those statements were subject to a nondisclosure agreement and attorney-client privilege.).

about the statute's constitutionality.[32] Just as SDR has a first amendment right to petition for redress of grievances, so too does Dillon. The anti-SLAPP statute does not operate to negate the privacy act, or any other statutory protection, merely because the disputed conduct occurred during a separate lawsuit.

SDR has not met its burden under the anti-SLAPP statute because it has not shown that its actions involved public participation and petition. The trial court erred by ruling otherwise.

C

As SDR has not met its burden to show that Dillon's claims were based on actions involving public participation and petition, it is not strictly necessary for us to consider whether Dillon has met his burden to show, by clear and convincing evidence, a probability of prevailing on his claims. However, we take this opportunity to clarify the scope and manner of analysis to be utilized by trial courts in ruling on the inquiry presented in the second step of the anti-SLAPP motion procedure.

The anti-SLAPP motion procedure statute dictates that after the moving party has shown that the claims at issue are based on an action involving public participation and petition, "the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim." RCW 4.24.525(4)(b). "Clear, cogent and convincing evidence is evidence which is weightier and more convincing than a preponderance of the evidence, but which

---

[32] See Opinion of the Justices (SLAPP Suit Procedure), 138 N.H. 445, 451, 641 A.2d 1012 (1994) ("A solution [to SLAPP suits] cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group.").

need not reach the level of 'beyond a reasonable doubt.'" In re the Disciplinary Proceeding Against of Deming, 108 Wn.2d 82, 109, 736 P.2d 639, 744 P.2d 340 (1987) (quoting Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 126, 615 P.2d 1279 (1980); Bland v. Mentor, 63 Wn.2d 150, 154, 385 P.2d 727 (1963)). "It is the quantum of evidence sufficient to convince the fact finder that the fact in issue is 'highly probable.'" Tiger Oil Corp. v. Yakima County, 158 Wn. App. 553, 562, 242 P.3d 936 (2010) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). This standard places a "higher procedural burden on the plaintiff than is required to survive a motion for summary judgment." Intercon Solutions, Inc. v. Basel Action Network, No. 12 C 6814, 2013 WL 4552782 at *15 (N.D.Ill., Aug. 28, 2013) (analyzing whether RCW 4.24.525 conflicts with Fed. R. Civ. P. 12 and 56).

California's anti-SLAPP statute does not utilize a clear and convincing evidence standard. Therefore, we do not find California law to be persuasive on this issue. See Lundberg, 115 Wn. App. at 177-78. Instead, we find Minnesota law to be persuasive. Minnesota's anti-SLAPP statute incorporates a clear and convincing evidence standard. MINN. STAT. § 554.02(3) ("[T]he court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability."). Minnesota also interprets the clear and convincing evidence standard in a manner similar to Washington. See Nexus v. Swift, 785 N.W.2d 771, 781 (Minn.App. 2010) ("Clear and convincing evidence 'requires more than a preponderance of the evidence but less than

proof beyond a reasonable doubt.' This standard is met when the matter sought to be proved is 'highly probable.'" (quoting Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978); State v. Kennedy, 585 N.W.2d 385, 389 (Minn. 1998))).

In Nexus, the Minnesota Court of Appeals interpreted the clear and convincing evidence standard in Minnesota's anti-SLAPP statute. 785 N.W.2d at 780-82. The court recognized that the statute does not require that the plaintiff prove his or her claim in response to an anti-SLAPP motion, as such a requirement would violate the state "constitutional right to have the jury determine all triable issues of material fact." Nexus, 785 N.W.2d at 781. The court, therefore, held that the clear and convincing evidence standard must be viewed "*in light of the Rule 12 standard for granting judgment on the pleadings*" or "*in light of the Rule 56 standard for granting summary judgment,*" depending on the stage in the litigation during which the motion is made. Nexus, 785 N.W.2d at 781-82. The court explained how this operates:

> Regardless of whether a motion to dismiss asserting immunity under [the anti-SLAPP statute] is made at the stage of litigation when judgment on the pleadings may be appropriate or when summary judgment may be appropriate, ultimate determinations of fact are not required by the clear-and-convincing standard . . . . These standards require that reasonable inferences be drawn in favor of the nonmoving party, which is unchanged by the anti-SLAPP statute. The test is merely whether, in light of those inferences and the view of evidence mandated by the standard for granting judgment on the pleadings or summary judgment, the plaintiff has shown that the defendant's speech or conduct was tortious or otherwise unlawful.

Nexus, 785 N.W.2d at 782. Additionally, the court held that "[t]he clear-and-convincing standard mandated by the anti-SLAPP statute" looks not only to

whether the plaintiff has demonstrated a prima facie claim, but "also requires consideration of the defenses raised by" the moving party. Nexus, 785 N.W.2d at 783; see also Phoenix Trading, Inc. v. Loops LLC, 732 F.3d 936, 942 n.6 (9th Cir. 2013). Courts in Washington should utilize a similar approach when assessing whether the plaintiff has met his or her burden under the second step of the anti-SLAPP motion to dismiss inquiry.

The role of the trial court in determining whether the plaintiff has met his or her burden under the second step of the anti-SLAPP motion to dismiss analysis is akin to the trial court's role in deciding a motion for summary judgment. The trial court may not find facts or make determinations of credibility. Gerbosi, 193 Cal.App.4th at 444; Ampex Corp. v. Cargle, 128 Cal.App.4th 1569, 1576, 27 Cal.Rptr.3d 863 (2005). Instead, "the court shall consider pleadings and supporting and opposing affidavits stating the facts" and may permit additional discovery upon a motion for good cause. RCW 4.24.525(4)(c), (5)(c). CR 56(e) similarly allows parties to submit affidavits in connection with motions for summary judgment, and the court may permit parties to submit "depositions, answers to interrogatories, or further affidavits" in support of the motion or response to the motion. Thus, when considering a motion to strike under the anti-SLAPP statute, the court should apply a summary judgment-like analysis to determine whether the plaintiff has shown, by clear and convincing evidence, a probability of prevailing on the merits.

Such an approach is necessary in order to preserve the plaintiff's right to a trial by jury.[33] Indeed, one purpose of the anti-SLAPP statute is to "[s]trike a balance between the rights of persons to file lawsuits and to trial by jury and the rights of persons to participate in matters of public concern." Laws of 2010, ch. 118, § 1 (2)(a). The right to trial by jury is inviolate under the state constitution. WASH. CONST. art. I, § 21. "The right to have factual questions decided by the jury is crucial to the right to trial by jury." State v. Montgomery, 163 Wn.2d 577, 590, 183 P.3d 267 (2008) (citing Sofie v. Fibreboard Corp., 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989)). The summary judgment standard does not offend the constitutional right to trial by jury because "it was not the purpose of [article I, section 21] to render the intervention of a jury mandatory . . . where no issue of fact was left for submission to, or determination by, the jury." In re Brandon v. Webb, 23 Wn.2d 155, 159, 160 P.2d 529 (1945); see also Nave v. City of Seattle, 68 Wn.2d 721, 725, 415 P.2d 93 (1966).

Accordingly, the anti-SLAPP statute does not violate the right to trial by jury where the court utilizes a summary judgment-like standard in deciding the motion to strike. See Nexus, 785 N.W.2d at 782 (use of a summary judgment-like standard for deciding anti-SLAPP motions does not violate right to jury trial under Minnesota constitution because "[t]he constitutional right to a jury trial does not prevent all pretrial determinations by a judge; it provides parties with the right

---

[33] "'Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality.'" In re Pers. Restraint of Matteson, 142 Wn.2d 298, 307, 12 P.3d 585 (2000) (internal quotation marks omitted) (quoting Addleman v. Bd. of Prison Terms & Paroles, 107 Wn.2d 503, 510, 730 P.2d 1327 (1986)); accord Lummi Indian Nation v. State, 170 Wn.2d 247, 264, 241 P.3d 1220 (2010).

to have triable issues of material fact decided by the jury"). Thus, in analyzing whether the plaintiff has shown, by clear and convincing evidence, a probability of prevailing on the merits, the trial court may not find facts, but rather must view the facts and all reasonable inferences therefrom in the light most favorable to the plaintiff. Mountain Park, 125 Wn.2d at 341; Gerbosi, 193 Cal.App.4th at 444.

As RCW 4.24.525(4)(b) does not evince the intent to apply two different procedures in deciding motions to strike, this same summary judgment-like standard also applies to the trial court's analysis under the first step of the anti-SLAPP motion to dismiss procedure. Thus, when deciding whether the moving party has shown, by a preponderance of the evidence, that the claim was based on an action involving public participation and petition, the court also must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Mountain Park, 125 Wn.2d at 341; Gerbosi, 193 Cal.App.4th at 444.

## V

We reverse the judgment of the trial court, vacate the award of statutory damages and attorney fees and costs, and remand for further proceedings. SDR's request for an award of attorney fees and costs in connection with this appeal is denied.

Reversed and remanded.

_Dwyer, J._

We concur:

_Spearman, A.C.J._          _Lau, J._