[No. 23214-6-II.   Division Two.   April 9, 1999.]
JOSEPH. D. KEARNEY, *Appellant*, v. SHELBY KEARNEY, *Defendant*, DIANA LYNN KIESEL, ET AL., *Respondents*.

*Law Offices of Sverre O. Staurset, P.S.*, by *Sean P. Wickens*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Doug Vanscoy, Deputy*; *Diana Lynn Kiesel*; *Steven Wolfe Thompson*; *Miller & Dart, P.S., Inc.*, by *John A. Miller*; and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*, by *Aaron Dean*, for respondents.

Hunt, J. — Plaintiff Joseph Kearney appeals the trial court's CR 12(b)(6) dismissal of three defendants from his

Washington State privacy act lawsuit. Holding that the privacy act prohibits only unconsented recording or intercepting of private telephone conversations and their admission into evidence, we affirm dismissal of the defendants who incorporated such conversations into reports to the court presiding over the Kearneys' custody dispute for use in determining their children's best interests.

## FACTS

Joseph and Shelby Kearney[1] filed for divorce on July 11, 1994; they had two minor children. The trial court appointed Diana Kiesel Guardian Ad Litem (GAL) to protect the children's interests throughout the dissolution proceedings.

During January 1995, Shelby recorded several telephone conversations between the children and Joseph; she gave copies of these tapes to GAL Kiesel. Based on her investigation and largely upon the taped conversations, Kiesel believed that Joseph was emotionally abusing the children by alienating them from their mother. Kiesel, therefore, recommended that Joseph's time with the children be supervised. She attached transcripts of the tapes to her report, which she filed with the superior court in September 1995.

Kiesel also gave copies of the tapes and transcripts to Naomi Huddlestone, the children's psychological evaluator for the dissolution proceeding. Huddlestone enlisted attorney John Miller[2] to help prepare her declaration to be filed in the dissolution proceeding. In the declaration, Huddlestone stated that the tapes formed part of the basis for her opinion that Joseph Kearney's behavior was detrimental to the children; she included some parts of the tape transcripts in her declaration, which was filed in superior court in September 1995.

---

[1] We refer to the parents by their first names for ease of reference. In so doing we mean no disrespect.

[2] John Miller also represented Shelby Kearney in the dissolution.

On January 23, 1996, Joseph filed a separate action, alleging that the telephone conversations had been recorded illegally and, as such, Shelby, Kiesel, Huddlestone, and Miller had violated his right to privacy under RCW 9.73.030 and .050.[3] He contended that: (1) Shelby had violated his privacy under RCW 9.73.030 by recording the conversation and giving copies to Kiesel, who in turn, filed them in superior court, in violation of RCW 9.73.050; (2) Kiesel had violated his privacy under RCW 9.73.050 by filing the transcripts with the court; (3) Huddlestone had violated his privacy under RCW 9.73.050 by filing the transcripts with the court; and (4) Miller, who should have known the tapes were illegally obtained, violated Joseph's privacy by assisting Huddlestone with her declaration referencing the tapes. Joseph alleged in his complaint that only Shelby had actually recorded the conversations; the other defendants had allegedly violated his rights by filing transcripts with the court.

Huddlestone and Kiesel filed motions to dismiss under CR 12(b)(6) for failure to state a claim upon which relief can be granted. They argued that RCW 9.73.030 prohibits only *intercepting* or *recording* private telephone conversations, not *divulging* such conversations; therefore, neither Huddlestone nor Kiesel violated the statute because they neither intercepted nor recorded but, rather, merely

---

[3]RCW 9.73.030 provides:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

RCW 9.73.050 provides:

Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, [except with permission of the aggrieved party under the privacy act].

divulged the conversations. Huddlestone further argued that RCW 9.73.050 is an evidentiary rule that prohibits the court's admission into evidence of illegally recorded conversations; the statute does not prohibit filing such evidence with the court. Kiesel also argued that "filing" is not the same as "introducing into evidence" and that, as GAL, she enjoyed quasi-judicial immunity. The trial court granted the CR 12(b)(6) motions in March 1996. Joseph appealed, challenging the trial court's dismissal of Huddlestone and Kiesel.

In April 1996, Miller filed a CR 12(b)(6) motion, asserting that: (1) he did not violate RCW 9.73.030 or .050; (2) he was representing Huddlestone, who had been dismissed from the suit; and (3) attorneys enjoy wide latitude and immunity from certain civil actions in the course of a judicial proceeding. The trial court entered orders dismissing Huddlestone, Kiesel, and Miller on April 23, 1996.

Huddlestone moved for attorney fees under RCW 4.84.185, which allows the trial court to award fees when a party is required to defend against a frivolous lawsuit. She claimed that Joseph had filed the suit merely to harass and to delay an expert witness who had testified adversely to his interests in the dissolution action. Huddlestone noted that immediately after Joseph Kearney filed the privacy act suit, he moved to have her removed from the dissolution proceeding. Huddlestone argued that the tape transcripts were already part of the record when she filed her declaration and that although the "violation of the primary purpose" argument was meritless, she had incurred over $6,600 in attorney fees, had rescheduled clients, and suffered stress and anxiety. The trial court denied Huddlestone's attorney fees motion but awarded her $125 in statutory attorney fees.

On May 30, 1996, Joseph filed a motion for reconsideration of the court's dismissal of Huddlestone, Kiesel, and Miller from his privacy act lawsuit. The trial court denied this motion. A commissioner of this court then ruled that Joseph had no right of appeal because the trial court had

not issued final orders and had not indicated the disposition of all claims; thus, Joseph had to file for discretionary review if he wished review of the trial court's action.

On July 23, 1996, Joseph Kearney sought discretionary review. Our commissioner ruled that: (1) Joseph had not demonstrated obvious or probable error, that the statute was clear and did not prohibit divulging the information contained on the tapes or the tapes themselves; (2) RCW 9.73.050 merely prohibits introducing illegal recordings into evidence and not the offering of the tapes; and (3) RCW 9.73.060[4] does not impose civil liability on those who violate the spirit and purpose of the act. We therefore denied review.

Joseph next sought discretionary review in the Supreme Court. Their commissioner found our commissioner's analysis persuasive, ruled that the trial court's decision was plainly supported by the statutory language and legislative history, and also denied review.

Meanwhile, in the dissolution proceeding, the trial court had denied Joseph's motion to suppress the tape recordings. While we were considering whether to grant Joseph's second motion for discretionary review of the suppression ruling, Shelby and Joseph entered into an agreed parenting plan. On October 8, 1996, Joseph and Shelby Kearney settled their dissolution.[5] Our commissioner found that the parties' agreement rendered the tape recording issue moot because compromise settlements bar appeals of prior adverse decisions. On January 3, 1997, we again denied review of the trial court's denial of Joseph's suppression motion.

The Decree of Dissolution was filed on October 24, 1997. As part of that decree, Joseph's suit against Shelby for privacy violation was to be dismissed with prejudice; both parties acknowledged that each had recorded the other's conversations and both had been aware of the recordings.

---

[4]RCW 9.73.060 imposes civil liability on individuals who violate chapter 9.73.

[5]This is the settlement to which Commissioner Meath referred in his January 3, 1997, ruling.

On March 23, 1998, Joseph and Shelby filed: (1) a stipulation that the privacy act matter was fully settled and compromised; and (2) an order releasing all claims arising out of the privacy act suit. Joseph's complaint against Shelby was dismissed with prejudice. At this point Joseph's privacy act suit became final for purposes of direct appeal.[6]

In April 1998, Joseph filed the instant appeal. Huddlestone filed a cross-appeal, alleging that the trial court erred by denying attorney fees she requested under RCW 4.85.185. All three respondents, Huddlestone, Kiesel, and Miller, request attorney fees under RAP 18.9; they claim that Joseph's appeal is frivolous and lacks merit.

## DISCUSSION
### I. STANDARD OF REVIEW

■ Granting a motion to dismiss under CR 12(b)(6) is a question of law, which we review de novo. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Motions under CR 12(b)(6) "should be granted 'sparingly and with care' and 'only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998); *Cutler*, 124 Wn.2d at 755; *Hoffer v. State*, 110 Wn.2d 415, 421, 755 P.2d 781 (1988), *aff'd on reh'g*, 113 Wn.2d 148 (1989) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 604 (1969)). We must determine whether Joseph can prove any set of facts, consistent with his complaint, that would entitle him to relief in superior court. *Hoffer*, 110 Wn.2d at 421.

### II. CIVIL LIABILITY FOR DISSEMINATION OF PRIVATE CONVERSATIONS
### A. RCW 9.73

■ Joseph argues that because the primary purpose behind RCW 9.73 is to prevent dissemination of illegally

---

[6]Kiesel, Huddlestone, and Miller had earlier prevailed in their CR 12(b)(6) motions to dismiss; Shelby had been the sole remaining defendant.

obtained private conversations, divulging such information gives rise to a cause of action, even though the statute creates liability only for recording or intercepting such information. Although Joseph's argument is intriguing, the statutory language is clear and unambiguous: The Legislature has chosen to create liability only for nonconsensual recording or intercepting, not divulging, private conversations.

RCW 9.73.060 describes an action for damages for violation of RCW 9.73.030:

> [a]ny person who, directly or by means of a detective agency or any other agent, violates the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute has injured his business, his person, or his reputation.

RCW 9.73.030 provides:

> it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any . . . [p]rivate communication transmitted by telephone . . . without first obtaining the consent of all the participants in the communication[.]

The words "record" and "intercept" do not encompass the meaning of "divulge."[7] It is clear that RCW 9.73.030 prohibits only recording or intercepting private phone conversations without the consent of the other party; it does not prohibit disseminating such conversations to others.

## B. LEGISLATIVE HISTORY

Before 1977, former RCW 9.73.030 provided that it was illegal to record, to intercept, or to *divulge* private

---

[7]"Intercept" or "record" under the statute means "by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication." RCW 9.73.030(1)(a).

telephone conversations without the consent of all parties. The 1977 amendment deleted the word "divulge," thereby eliminating as an illegal action the disclosure or dissemination of illegally recorded telephone conversations.[8] LAWS OF 1977, 1st Ex. Sess., ch. 363 § 1. The 1977 amendment clearly defeats Joseph's argument that because divulging private telephone conversations *was* illegal before the Legislature's 1977 removal of the word "divulge," it *is still* illegal to divulge such conversations.[9]

The statute is clear and unambiguous, especially in light of its pre-1977 inclusion and post-1977 deletion of the word "divulge" from its list of prohibited actions. *Kadoranian v Bellingham Police Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992). To violate the privacy act, one must record or intercept a private telephone conversation without consent of the other. Liability rests with the party recording or intercepting the conversation; divulging such conversations creates no liability under the statute. Here, Joseph Kearney can no longer reach that party, Shelby Kearney, because he has released her from all claims arising out of his privacy act suit.

The 1977 amendments to the privacy act eliminated civil liability for disseminating information obtained in violation of the act. As such, Joseph can prove no set of facts, consis-

---

[8]The Judiciary Committee counsel, in a letter dated February 25, 1977, also fully informed the Senate Judiciary Committee that removing the word "divulge" from the statutory scheme would eliminate liability for divulging protected conversations. The Legislature passed the amendments in July 1977. 2 SENATE JOURNAL, 45th Leg., 1st Ex. Sess. 2832, 2857, 3124 (Wash. 1977). In an analysis of SB 2419 (the 1977 amendments to RCW 9.73) dated February 22, 1977, it was noted that "[t]he amendment deletes the prohibition against divulging the contents of private communications and conversations covered by the statute amended so that the law will prohibit only the interception and recording of these communications and conversations." This statement was repeated in a subsequent analysis, dated March 25, 1977.

[9]Kearney relies upon several Washington cases that state the primary purpose of RCW 9.73 is to prevent dissemination of illegally obtained information. Thus, he argues, divulging such information violates the primary purpose of the act and is still illegal. These cases cite *State v. Wanrow*, 88 Wn.2d 221, 233, 559 P.2d 548 (1977), for the statement of legislative purpose. But it is apparent that the Legislature amended RCW 9.73 in 1977 partially in response to *Wanrow*'s narrow interpretation of RCW 9.73, the privacy act.

tent with his complaint, that would entitle him to relief; therefore, he is not entitled to reinstatement of his lawsuit.

His argument that this reading of the statute eviscerates important policies underlying the privacy act should be directed to the Legislature, which over 20 years ago removed "divulge" from the list of proscriptions in order to aid law enforcement but, in so doing, also freed private parties from the earlier prohibition against divulging private conversations.

### C. CIVIL LIABILITY FOR FILING PRIVATE CONVERSATIONS

■ RCW 9.73.050 provides that information recorded or intercepted in violation of the privacy act cannot be admitted into evidence in Washington State courts.[10] Joseph claims that because Huddlestone, Kiesel, and Miller filed documents with the court that contained transcripts of private conversations, they violated this provision of the privacy act and are subject to civil liability under RCW 9.73.060. We disagree.

■ When there is no ambiguity in a statute and its meaning is clear, there is no need for judicial interpretation. *Kadoranian*, 119 Wn.2d at 185. We agree with the commissioners of our court and of the Supreme Court that RCW 9.73.050 was directed at the trial court, not the parties; the statute prohibits admission, not offering, of illegally recorded private conversations, and is a rule of evidence. RCW 9.73.050 is not ambiguous; it clearly prohibits

---

[10]The full text of RCW 9.73.050 follows:

Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73.080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.

the admission, not the offering, of evidence obtained in violation of the privacy act.[11]

There are also sound policy reasons for declining to read into the statute civil liability for filing these documents. The policy behind witness immunity encourages unrestrained testimony, thereby facilitating fact finding. *Deatherage v. Examining Bd. of Psychology*, 134 Wn.2d 131, 136-37, 948 P.2d 828 (1997). This immunity extends to expert witnesses testifying in areas beyond the capabilities of the fact finder and encourages their full cooperation in the court's quest for the truth. *Deatherage*, 134 Wn.2d at 136-37.

Consistent with this policy, the Washington Supreme Court has granted immunity under RCW 11.88 to GALs, who are arms of the court and partners in the court's quest for truth. *Barr v. Day*, 124 Wn.2d 318, 332, 879 P.2d 912 (1994). Attorneys likewise enjoy immunity from civil liability during judicial proceedings to ensure that they have freedom to secure justice for clients. *See Liberty Bank of Seattle, Inc. v. Henderson*, 75 Wn. App. 546, 561, 878 P.2d 1259 (1994); *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980); *Gold Seal Chinchillas, Inc. v. State*, 69 Wn.2d 828, 420 P.2d 698 (1966). Thus, without so holding, we question whether individuals such as Huddlestone, Kiesel, and Miller could even be subject to civil liability for offering declarations or testifying about such private conversations.

RCW 9.73.050 does not create civil liability for filing information obtained in violation of the privacy act. As such, Huddlestone, Kiesel, and Miller did not violate the privacy act by filing documents with the Pierce County Superior Court in connection with a custody dispute in Joseph's dissolution action. The trial court properly dismissed Joseph's lawsuit against them.

---

[11]Moreover, here the parties settled the dissolution action without trial; there simply was no evidence introduced in the dissolution action.

### III. ATTORNEY FEES
### A. FRIVOLOUS LAWSUITS—RCW 4.85.185

■ We review a trial court's grant or denial of attorney fees under RCW 4.84.185 for an abuse of discretion. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998); *Biggs v. Vail*, 119 Wn.2d 129, 137, 830 P.2d 350 (1992). Attorney fees are available under RCW 4.84.185, only when the action is advanced without cause and the action as a whole can be deemed frivolous. *Biggs*, 119 Wn.2d at 136-37. An appeal is frivolous when there are no debatable issues over which reasonable minds could differ and there is so little merit that the chance of reversal is slim. *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200, *review denied*, 132 Wn.2d 1010 (1997).

Huddlestone argued to the trial court that: (1) Joseph's suit was filed solely to harass her and to create a conflict of interest that would require her dismissal from the dissolution action; (2) Joseph's argument was not based on law or fact; (3) Joseph's strategy was to delay and to harass; (4) Huddlestone clearly did not violate the privacy act because she merely included transcripts that were already part of the public record; (5) immediately after initiating the suit, Joseph moved the court to remove Huddlestone from the dissolution action; and (6) as such, the entire action was absurd and frivolous.

■ The purpose of RCW 4.84.185 is to "discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases." *Biggs*, 119 Wn.2d at 137. Joseph's privacy act suit was meritless: There were no debatable issues presented to the trial court; the trial court found that Joseph had failed to state a claim upon which relief could be granted; and both we and the Supreme Court found Joseph's legal issues unpersuasive.

In *Quick-Ruben*, the court noted that because reasonable

inquiry would have revealed that the party's position was untenable, CR 11 sanctions were appropriate for filing a frivolous lawsuit; the court found that fees under RCW 4.84.185 were also appropriate. *Quick-Ruben*, 136 Wn.2d at 904-05. Here, Joseph did not rely upon legislative history to support his argument until May 20, 1996, four months after filing the lawsuit. But even the statute's legislative history clearly demonstrates that his position is untenable. Had Joseph reasonably inquired into the legal basis for his claim, he should have concluded that advancing such a position was untenable based on existing law.[12]

Moreover, Huddlestone, the children's therapist, had an independent basis for evaluating the children and reporting to the court about their best interests; and she merely summarized information from the telephone transcripts already on file with the court. And as an expert witness assisting the court, Huddlestone likely would be immune from civil liability under the doctrine of expert witness immunity. *Deatherage*, 134 Wn.2d at 136-37. We hold that the trial court abused its discretion by denying attorney fees to Huddlestone and that she should be compensated for expenses incurred in defending against this meritless case at trial.

### B. ATTORNEY FEES ON APPEAL—RAP 18.9

RAP 18.9 allows the appellate court to award compensatory damages when a party files a frivolous appeal or files an appeal merely to delay the outcome of underlying proceedings. An appeal is frivolous when there are no debatable issues over which reasonable minds could differ, and there is so little merit that the chance of reversal is slim. *Goad*, 85 Wn. App. at 105; *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).

---

[12]First, a plain reading of RCW 9.73.030 demonstrates that only recording or intercepting conversation is prohibited. Second, RCW 9.73.050 plainly prohibits admitting such conversations into evidence; it clearly does not prohibit filing such information. Third, Joseph argued the legislative purpose to the trial court in his response to the 12(b)(6) motions, but a reasonable inquiry into the legislative history should have illuminated the matter for him.

It is appropriate to award fees under RAP 18.9 in this case because Joseph presented no debatable issues over which reasonable minds could differ; this appeal has little merit and the chance for reversal is slim. Our Commissioner Weathersby ruled that Joseph had not demonstrated obvious or probable error in his petition for discretionary review. Presenting the same petition to the Supreme Court, Joseph was again denied review; Commissioner Crooks noted that the trial court's decision was plainly supported by the law and there was no obvious or probable error in the trial court's decision. Yet Joseph again presented the same issues to this court when the underlying action became final and he appealed directly. Thus, we hold that Huddlestone, Kiesel, and Miller are entitled to fees and costs under RAP 18.9.

## IV. REMAINING ISSUES

Because there is no cause of action, we need not address these remaining issues: (1) whether Kiesel, as GAL, enjoyed quasi-judicial immunity from the suit; and (2) whether Miller would be immune from this suit because attorneys enjoy immunity from certain civil actions when acting in the course of a judicial proceeding.

We affirm the trial court's dismissal of Joseph's action, reverse the trial court's denial of Huddlestone's attorney fees, and grant reasonable attorney fees and costs on appeal to Huddlestone, Kiesel, and Miller, who must comply with RAP 14.4 and 18.1 to recover their fees and costs.

BRIDGEWATER, C.J., and HOUGHTON, J., concur.

Review denied at 138 Wn.2d 1022 (1999).