# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GAVIN FAZIO, | No. 52109-1-II |
| Respondent, | |
| v. | |
| BRITTANY STEPPER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Following the dissolution of their marriage, Gavin Fazio and Brittany Stepper were subject to a final child support order. One year later, Stepper filed a motion for contempt, alleging Fazio violated the order. The trial court denied Stepper's motion, found that Stepper had brought the motion in bad faith, and awarded Fazio his attorney fees.

On appeal, Stepper argues that trial court erred when it (1) found there was insufficient evidence to hold Fazio in contempt; (2) found, without explanation, that Stepper had brought the contempt motion in bad faith; and (3) awarded Fazio his attorney fees.

Because sufficient evidence supports the trial court's findings of fact, we hold that the trial court did not err. Thus, we affirm.

## FACTS

### I. ORDERS AND CONFERENCE BOARD HEARING

A trial court dissolved the marriage of Fazio and Stepper in 2017. In addition to the dissolution decree, the trial court entered a final child support order regarding the parties' two minor children. The final child support order stated that Fazio could claim one child on his

taxes, provided that Fazio was current in the payment of his child support, uninsured medical expenses, and daycare expenses by December 31 of the tax year at issue.

A.    *Child Support*

Fazio began making child support payments under a temporary order filed in April 2016. Under the temporary order, Fazio paid Stepper directly using three methods: check, Kitsap Credit Union transfers, and Kitsap MoneyGram money orders. After the final child support order was filed, Fazio began paying Stepper through the State of Washington Division of Child Support (DCS).

At some point after the dissolution finalized, DCS examined Fazio's history of payments that he made directly to Stepper and determined that Fazio was behind on his child support obligation. Fazio requested a conference board hearing arguing that he had made certain payments directly to Stepper.[1] Stepper agreed that these payments had been made, and DCS credited Fazio with these payments. Nonetheless, DCS calculated that Fazio remained in arrears.

B.    *Medical Expenses*

The final child support order stated that each parent must provide the other parent with written documentation of the medical expenses within 30 days of that expense being incurred. The other parent must pay his or her proportionate share of that expense within 30 days of

---

[1] "A conference board is an informal review of case actions and of the circumstances of the parties and children related to a child support case." WAC 388-14A-6400(1). "A conference board is not a formal hearing under the Administrative Procedure Act, chapter 34.05 RCW," and "does not replace any formal hearing right created by chapters 388-14A WAC, or by chapters 26.23, 74.20 or 74.20A RCW." WAC 388-14A-6400(4), (5).

receipt of the documentation of the expense. The final child support order stated that each parent will make payments directly to the service provider, not the parent who paid the expense.

C. *Preschool Expenses*

The final child support order also addressed the parties' obligations for daycare expenses. The final child support order stated that each parent must provide the other parent with written documentation of daycare expenses within 30 days of that expense being incurred, and the other parent must pay the service provider his or her share of that expense within 30 days of receipt of written documentation. In a subsequent agreed order clarifying the final child support order, Fazio and Stepper each agreed to pay one-half of preschool expenses. This subsequent order did not specify the procedure for notification of preschool expenses or payment of preschool expenses.

## II. MOTION FOR CONTEMPT AND CONTEMPT RULING

In 2018, Stepper filed a motion for contempt, alleging that Fazio had violated the final child support order by claiming a child on his taxes despite being delinquent in his payments of child support, uninsured medical expenses, and preschool expenses. In support of her motion, Stepper attached her declaration. Fazio responded to the motion, attaching his own declaration.

A. *Child Support*

In support of her argument that Fazio was delinquent on his child support payments, Stepper submitted a DCS debt calculation sheet showing that Fazio was delinquent. Stepper relied on the DCS calculation that, after the conference board hearing recalculation, Fazio owed $1,961.57 in December 2017. Stepper claimed that he failed to pay this amount before the end of that year. The only documents Stepper submitted to support her argument that Fazio was

delinquent in child support were the DCS debt calculation worksheet and the DCS conference board decision explaining adjustments to Fazio's child support balance. At the time of the contempt hearing, Fazio continued to challenge DCS's calculation and, as a result, the DCS matter remained under review.

In his declaration, Fazio claimed that he was current on his child support obligation. He demonstrated this by explaining every direct payment he made to Stepper, referencing a receipt, check, or bank statement associated with each payment, and submitting receipts of check and money order payments Fazio made to Stepper, Fazio's bank statements showing the withdrawals or transfers, and Stepper's bank statements showing the deposits. Fazio also submitted an e-mail from MoneyGram confirming that all of Fazio's money orders were cashed. Additionally, Fazio stated that Stepper made false claims and misrepresentations to DCS about his payments to her.

B.      *Medical Expenses*

Stepper claimed that Fazio owed her $101.98 for past due medical expenses. Stepper stated that a child's medical visit in July 2017 produced two separate bills, one from CHI Franciscan Health and one from West Sound Emergency Physicians. Stepper stated that the bill from West Sound Emergency Physicians was sent to collections in December 2017 and that she was unaware of this bill until that time. Stepper then paid the West Sound Emergency Physicians bill in full on December 2, 2017. On December 2, 2017, Stepper told Fazio about this bill and asked for reimbursement. Fazio incorrectly sent payment for the West Sound Emergency Physicians bill to CHI Franciscan Health. Because a child received subsequent treatment from CHI Franciscan Health in October 2017, Fazio's payment was credited to that

balance. Stepper stated that Fazio still owed his share for medical expenses based on the West Sound Emergency Physicians bill she provided to him in December 2017.

Fazio stated that Stepper contacted him on December 2, 2017 regarding a child's emergency visit from July. Fazio asked for a copy of the bill, which Stepper eventually provided on December 14. Fazio paid his portion of the expense, $136.83, directly to CHI Franciscan Health.

C.      *Preschool Expenses*

In her motion, Stepper argued that Fazio owed preschool expenses from 2017, totaling $318.00. Stepper provided a "Statement of Account" from the preschool, detailing the registration and tuition payments. Clerk's Papers (C) at 36. This statement showed Stepper paid half of the balance due for tuition each month, and showed a remaining balance for tuition and registration charges from 2017 of $318.00. Stepper stated that the final child support order required Fazio to pay his share of these expenses to the service provider. Stepper stated that the preschool billing statement was placed in the child's "take-home bucket" for Fazio.

Fazio stated that the preschool listed Stepper as the custodial parent, and that the preschool would not give Fazio information directly without Stepper's permission. Fazio stated Stepper did not give this permission. Fazio stated that Stepper never provided him with a preschool expenses bill and that he never received a bill through the child's take-home bucket. He stated he also asked Stepper to provide him with information regarding the preschool expenses because she previously told him tuition was $150.00 per month, but a teacher at the preschool stated $115.00 per month. Stepper refused to provide this expense information.

D.       *Ruling on the Motion for Contempt*

Following the contempt hearing, the trial court issued a letter opinion, finding that there was insufficient evidence to hold Fazio in contempt, and inviting Fazio to submit a request for attorney fees, which he did.  The trial court ruled that Fazio was not in contempt.  The trial court issued a contempt hearing order which contained findings that stated, "Insufficient evidence has been presented of past due support," and "Stepper acted in bad faith in bringing the proceeding before the Court without substantive evidence of a violation of the support order."  CP at 130.  The trial court awarded Fazio's counsel her attorney fees under RCW 26.18.160.

Stepper appeals the contempt hearing order.

ANALYSIS

I. ORDER DENYING CONTEMPT

Stepper argues that the trial court erred when it found that she presented insufficient evidence of past due support and ruled that Fazio was not in contempt.  Stepper also argues that the trial court erred by finding, "without explanation," that she acted in bad faith.  Br. of Appellant at 17.  We hold that the trial court did not abuse its discretion when it denied Stepper's motion based on insufficient evidence.  Further, we hold that the trial court's finding that Stepper acted in bad faith is supported by substantial evidence.

"Contempt of court" is the intentional disobedience of a lawful court order.  RCW 7.21.010(1)(b).  We review a trial court's decision in a contempt proceeding for an abuse of discretion.  *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).  A trial

6

court's decision is based on untenable grounds if the trial court's factual findings are not supported by the record. *In re Matter of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016). As long as the trial court's findings of fact are supported by substantial evidence, they will not be disturbed on appeal. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Evidence is substantial if it exists in a sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

When a parent does not make court-ordered child support payments or refuses to comply with a parenting plan, the other parent may initiate contempt proceedings to enforce compliance with the court's order. RCW 26.18.050. The moving party has the burden to prove contempt by a preponderance of the evidence. *In re Marriage of James*, 79 Wn. App. 436, 442, 903 P.2d 470 (1995). "This showing must include evidence from which the trial court can find that the offending party has acted in bad faith or engaged in intentional misconduct." *Marriage of James*, 79 Wn. App. at 442. In a contempt case, a trial court balances competing evidence, resolves conflicts, and weighs credibility. *In re Marriage of Rideout*, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003). We do not reweigh conflicting evidence or substitute our own judgment for that of the trial court. *Marriage of Rockwell*, 141 Wn. App. at 242.

A.      *Stepper's Insufficient Evidence of Contempt*

The trial court concluded that insufficient evidence supported Stepper's motion for contempt. We hold that the trial court did not abuse its discretion when it determined that insufficient evidence supported her motion.

7

Regarding child support, Stepper argues that she presented sufficient evidence that Fazio was delinquent in his payments. Stepper argues that because DCS determined that Fazio was behind in his payments based on DCS's review of the evidence, she has presented sufficient evidence to find Fazio in contempt. Additionally, she argues that Fazio did not present evidence to DCS to support that he was entitled to additional credits for previous payments. However, Stepper does not cite any authority to support that either the trial court or this court is bound by the DCS conference board decision.

Fazio submitted documentary evidence of every payment he made to Stepper from April 2016 through the end of 2017. Fazio referenced each receipt, check, or bank statement. He showed his withdrawals and Stepper's deposits. The trial court balanced competing evidence and concluded that Stepper had not met her burden to show contempt. The trial court did not abuse its discretion when it determined that Stepper did not provide sufficient evidence of contempt regarding child support payments.

Regarding uninsured medical expenses, Stepper argues that Fazio was in violation of the final child support order based on the West Sound Emergency Physicians bill. The final child support order requires each parent to provide the other parent with written documentation of the medical expenses within 30 days of that expense being incurred. The other parent then has 30 days to pay his or her proportionate share of that expense. The final child support order states that each parent will make payments directly to the service provider, not the parent who pays the expense.

Stepper paid the West Sound Emergency Physicians bill in full on December 2, 2017. On December 2, 2017, Stepper told Fazio about this bill and asked for reimbursement. Stepper

did not follow the final child support order's process for paying these expenses. Moreover, Stepper provided the expense to Fazio on December 2, giving Fazio until January 1 to provide payment to the treatment provider. Fazio could not have been delinquent on December 31, 2017, (the date by which he was required to be current in his obligations to claim the exemption) because the 30 days to pay had not passed from Stepper's documentation of the expense. The trial court did not abuse its discretion when determining that Stepper did not provide sufficient evidence of contempt regarding uninsured medical expenses.

Regarding preschool expenses, Stepper argues that Fazio did not pay registration and tuition costs and that Fazio provided no proof of payment for these expenses. Fazio stated that he had never seen billing statements for preschool expenses and Stepper refused to provide billing statements from the preschool. Fazio further stated that Stepper prevented him from accessing the preschool expenses. The trial court considered the parties' competing statements and determined that Stepper had not met her burden to show contempt regarding the preschool expenses. We do not reweigh competing evidence. *Marriage of Rockwell*, 141 Wn. App. at 242. The trial court did not abuse its discretion regarding the preschool expenses. Accordingly, we hold that the evidence presented supports the trial court's determination that Stepper presented insufficient evidence of past due support.

B.      *Stepper's Bad Faith*

Stepper argues that the trial court erred when it found "without explanation" that she acted in bad faith, thus entitling Fazio to attorney fees under RCW 26.18.160. We hold that substantial evidence supports the bad faith finding.

9

As an initial matter, Stepper appears to argue that the trial court was required to thoroughly explain its reasoning in making its bad faith finding. She cites no cases for this proposition. As stated above, as long as the trial court's findings of fact are supported by substantial evidence, we will not disturb those findings on appeal. *Marriage of Rockwell*, 141 Wn. App. at 242. Thus, we review the trial court's bad faith finding for substantial evidence.

RCW 26.18.160 provides an award of attorney fees for the prevailing party in an action to enforce a support order. The obligor parent may not be considered the prevailing party unless the obligee parent acted in bad faith regarding the proceeding at issue. RCW 26.18.160. In equity, bad faith occurs when a party intentionally brings a claim with improper motive or purpose. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 929, 982 P.2d 131 (1999).

Here, a sufficient quantum of evidence exists to persuade a fair-minded person that Stepper acted in bad faith. Fazio's declaration detailed how Stepper sought enforcement of child support through DCS. Fazio stated that Stepper did not accurately report his past payments, and relying on Stepper's reporting, DCS made findings that Fazio was delinquent in his payments. Fazio argued that Stepper relied solely on the DCS findings, based on Stepper's inaccurate information, to bring the motion for contempt. Further, Fazio stated that Stepper did not allow Fazio access to preschool expenses, and then brought the contempt motion based on a failure to pay these expenses. Further, Stepper's motion sought compensation for the alleged missed payments.

Stepper brought a motion for contempt with the motive of compensation for payments that were not delinquent. Her allegations of missed payments were based on misinformation she

10

provided to DCS and her own actions preventing Fazio's access to the preschool expenses. Substantial evidence supports the trial court finding that Stepper acted in bad faith. We hold that the trial court did not abuse its discretion when it found that Stepper acted in bad faith.

## II. TRIAL COURT ATTORNEY FEES

Stepper argues that because the trial court erred when finding she acted in bad faith, Fazio was not entitled to his attorney fees. Because substantial evidence supports the trial court's finding of bad faith, we hold that Fazio was entitled to his attorney fees at the trial court.

Fazio requested an award of attorney fees under RCW 26.18.160. That statute states:

> In any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees. An obligor may not be considered a prevailing party under this section unless the obligee has acted in bad faith in connection with the proceeding in question.

RCW 26.18.160. An attorney fee award for the prevailing party under RCW 26.18.160 is mandatory. *In re Marriage of Nelson*, 62 Wn. App. 515, 520, 814 P.2d 1208 (1991). Whether a legal basis exists for attorney fees is a question of law that we review de novo. *In re Marriage of Wixom*, 190 Wn. App. 719, 728, 360 P.3d 960 (2015).

Here, Fazio, the obligor, prevailed in the contempt proceeding. The trial court's finding that Stepper, the obligee, acted in bad faith is supported by substantial evidence. Because Fazio is a prevailing party under RCW 26.18.160, we hold that the trial court did not err when awarding his attorney fees.

## III. ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal. Stepper requests attorney fees based on RAP 18.1, RCW 26.18.160, and RCW 26.09.140. Fazio requests attorney fees based on RCW

26.18.160 and sanctions based on RAP 18.9(a). We deny both parties' requests for attorney fees and Fazio's request for sanctions.

RAP 18.1 allows this court to grant a party reasonable attorney fees or expenses if an applicable statute permits. RCW 26.18.160 mandates an award of attorney fees for the prevailing party in an action to enforce a support order. The obligor parent may not be considered the prevailing party unless the obligee parent acted in bad faith regarding the proceeding at issue. RCW 26.18.160. RCW 26.18.160 includes an action on appeal. *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 696, 959 P.2d 687 (1998). Separately, RCW 26.09.140 permits a court to order a party to pay a reasonable amount for the cost to the other party of maintaining or defending a proceeding related to the enforcement of a child support order, after considering the financial resources of both parties. Additionally, RAP 18.9 allows this court to impose compensatory damages or sanctions against a party filing a frivolous appeal. An appeal is frivolous if "there are no debatable issues over which reasonable minds could differ and there is so little merit that the chance of reversal is slim." *Kearney v. Kearney*, 95 Wn. App. 405, 416, 974 P.2d 872 (1999).

Regarding Stepper's request for attorney fees, because she is not the prevailing party on appeal, we do not award attorney fees based on RCW 26.18.160. Separately, Stepper requests attorney fees based on RCW 26.09.140. However, RAP 18.1(c) requires Stepper to file a financial affidavit with this court before our consideration of this case. Stepper failed to do so. We deny Stepper's request for attorney fees under RCW 26.09.140.

Regarding Fazio's request for attorney fees, we hold that Stepper did not bring her appeal in bad faith or frivolously. Here, based on the sparse language of the contempt order regarding

No. 52109-1-II

bad faith, whether the bad faith finding was supported by substantial evidence is a debatable issue over which reasonable minds could differ. Because Stepper's appeal is neither frivolous nor brought in bad faith, we do not award Fazio his attorney fees nor grant his request for sanctions.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Cruser, J.

13