IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| JOSEPH SNOWDEN, and DEBRA SNOWDEN, individually, and as each other's spouse, | No. 81829-5-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GILBERT N. ONDUSKO, MD, SCOTT T. EKIN, MD, and HARRISON MEDICAL CENTER, | |
| Respondent. | |

LEACH, J. — Joseph and Debra Snowden appeal the superior court's summary judgment dismissal of the medical negligence claims against their respective Emergency Department physicians Dr. Gilbert N. Ondusko, Dr. Scott T. Ekin, and Harrison Medical Center. The Snowdens contend the testimony of their medical expert created genuine issues of material fact sufficient to defeat a summary judgment request. We disagree and affirm.

BACKGROUND

On December 30, 2011, Joseph Snowden and Debra Snowden[1] were injured in a head-on car accident. Paramedics arrived on the scene of the accident

_____

[1] For clarity, we refer to Joseph and Debra by their first names and collectively refer to them as the Snowdens.

Citations and pin cites are based on the Westlaw online version of the cited material.

and observed Joseph walking around with a bone in his lower left leg exposed. Paramedics transported Joseph and Debra by ambulance to Harrison Medical Center (HMC).

Joseph's Medical Treatment

At HMC, Dr. Ondusko ran a series of tests including a CT (computerized tomography) scan of Joseph's head, neck, chest, abdomen, and pelvis, an EKG, and an X-ray of his left leg tibia and fibula. The test results were normal and showed no fractures. Dr. Ondusko treated Joseph's wounds to his chest and abdomen. He also sutured a deep laceration on Joseph's lower left leg.

On January 3, 2012, Joseph returned to the HMC Emergency Department (ED) complaining of pain and discomfort with swelling in his right and left calf, ankle, and foot. Dr. Timothy Dahlgren examined Joseph and told him "to elevate his legs to try to reduce the swelling," "to keep the wound clean," and "to have the sutures removed as scheduled."

Three days later, on January 6, 2012, Joseph returned to the HMC ED. He complained again of pain and swelling in both legs. The pain in his left leg increased when he walked. Dr. Denis Ashley examined Joseph and ordered a number of tests including a Doppler ultrasound of both lower legs to rule out a deep vein thrombosis. The tests did not reveal evidence of other injuries or illnesses. Dr. Ashley could not determine the cause of the swelling. He concluded Joseph would "need further evaluation for this if his symptoms persist[ed]." Because of the amount of swelling, Dr. Ashley was concerned that if they removed the sutures

on the left leg, the wound would split open. Instead of removing the sutures, Dr. Ashley prescribed Joseph antibiotics and pain medication and asked him to follow up in two days to reevaluate the wound and sutures. Joseph returned on January 7 and January 8, 2012. He complained the swelling in his legs had increased and the pain medication did not work. Dr. Ashley observed swelling in both of Joseph's legs and removed the sutures.

On January 11, 2012, Joseph visited Dr. Roger D. Ludwig, Jr. at the Poulsbo Urgent Care. Dr. Ludwig examined Joseph's legs and found both legs were swollen, red, and tender on palpitation. He also examined Joseph's right foot, which was swollen and tender. Dr. Ludwig determined Joseph's right foot was fractured and placed it in a "fracture sandal," and "advised [Joseph] to avoid weight bearing," and provided a refill for pain medication. Dr. Ludwig also arranged for Joseph to consult "with orthopedics…due to intraarticular involvement of the fracture."

On January 17, 2012, Joseph visited Dr. Blain Crandell, a primary care physician at Virginia Mason Medical Center. He continued to complain about swelling and pain in both legs. Dr. Crandell recommended Joseph keep his right foot in a boot for four weeks. Joseph returned to Dr. Crandell's office on February 7 with the same complaints. Dr. Crandell prescribed additional pain medicine, x-rays, and referred Joseph to orthopedics for continued management.

On February 14, 2012, Joseph visited Dr. Alvin Ngan, a podiatrist at Virginia Mason Medical Center. Dr. Ngan wrote in his clinic notes, "Unfortunately, this

3

injury was missed on initial examination. We discussed all tx options, including conservative treatment via cast, versus surgical." Dr. Ngan took additional CT scans and diagnosed Joseph's injury as a Lisfranc fracture/dislocation, "which is a fracture/dislocation of the tarsometatarsal joint." In a later clinic note, Dr. Ngan wrote, "Indicated to Joseph it is difficult to detect occult instability, where the joints could be aligned NWB, but during gait, could actually be subluxed." After numerous additional tests and visits, on February 29, 2012, Dr. Ngan performed surgery to fuse the fracture.

Debra's Medical Treatment

When Debra arrived at HMC, on December 30, 2011, she complained of chest and neck pains worsening with movement. Dr. Ekin examined Debra. He found widespread tenderness along her spine and sternum but no tenderness of her liver or spleen. Dr. Ekin considered diagnosing Debra with a "spine fracture, ligamentous injury, sternal injury, pneumothorax, and aortic injuries" and ordered x-rays. The x-rays revealed no evidence of these injuries.

Debra returned with Joseph to HMC ED on January 3, 2012 complaining of increased left side pain and pressure, and shortness of breath. Dr. Dahlgren reexamined Debra and found her to be increasingly pale. He ordered additional x-rays. The x-rays revealed a sternal facture. The x-rays also showed increased "contour deformities of left eighth and ninth ribs suspicious for nondisplaced rib fractures" and a small amount of fluid in the left hemithorax. Dr. Dahlgren also ordered a CAT scan of Debra's chest, abdomen, and pelvis with IV contrast. The

4

CAT scan showed a sternal facture. It also revealed a splenic rupture that was actively bleeding with blood pooling in her abdomen and pelvis. Dr. Dahlgren wrote in his clinic notes,

> I actually think that she just changed today. I think she had a delayed bleed that suddenly became worse and more significant, which was causing her symptoms to be quite subtle prior. In fact, even when I saw her when she first came in here, I was fairly unimpressed with her abdominal exam. She worsened while she was here. My suspicion is that her prior exam would have been such that a ruptured spleen would not and should not have been considered in the differential diagnosis.

He also explained he spent "40 minutes of critical care time" with Debra.

Dr. Dahlgren called Dr. Ty Chun who admitted Debra to the operating room. In the middle of the night, Dr. Chun performed a splenectomy. Instead of trying to save Debra's spleen, he decided to do a splenectomy because of limited staffing. The next day, on January 4, 2012, Debra was reexamined and treated for pain management.

Procedural History

On December 29, 2015, Joseph and Debra filed a medical negligence suit under chapter 7.70 RCW and chapter 7.72 RCW against Drs. Ondusko and Ekin, HMC, and West Sound Emergency Physicians, PLLC. They alleged Drs. Ondusko and Ekin "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time as physicians and emergency care health care facilities in the state of Washington, acting in the same or similar circumstances." They also alleged they suffered special and general damages as a direct and proximate result of the doctors' negligent care. More specifically, they

5

alleged Dr. Ondusko and the other treating physicians' failure to diagnose the right foot fracture violated the applicable standard of care causing Joseph to suffer. And, they alleged Dr. Ekin's failure to diagnose Debra's sternum and rib fractures deviated from the applicable standard of care and caused her to suffer.

HMC sought partial summary judgment for all claims except claims of vicarious liability for the physicians' treatment of the Snowdens. On August 19, 2016, the superior court denied HMC's request.

On September 16, 2016, Drs. Ondusko and Ekin asked the court to dismiss the claims against them on summary judgment. And, on October 14, 2016, HMC filed a second request for partial summary judgment.

In response, the Snowdens filed declarations from their attorneys, Joseph, and Dr. Andrea Fisk. Dr. Fisk is a board certified Emergency Medicine physician hired as an expert. After reviewing the Snowdens' medical records, Dr. Fisk declared Drs. Ondusko and Ekin's treatment fell below the standard of care and resulted in delayed diagnoses. Dr. Fisk declared, "On a more probable than not basis, had Dr. Ondusko detected the fracture, [Joseph] would have been more promptly treated by the podiatrist and instructed not to bear weight on the right foot. This would have likely lead to less pain and suffering." She also declared, "had the sternal fracture, 4 left rib fractures and splenic injury been detected on her initial visit on 12/30/2011 by Dr. Scott Ekin, [Debra] would have had a higher chance for a better outcome with earlier treatment."

6

HMC replied to the declarations. It noted the Snowdens did not challenge the dismissal of nurse and corporate negligence claims. HMC also argued Dr. Fisk was not qualified or competent to opine on the standard of care provided by a radiologist or the podiatric/orthopedic outcomes.

Drs. Ondusko and Ekin also replied arguing Dr. Fisk's declaration did not raise a genuine issue of material fact about the alleged negligence. They also argued Dr. Fisk's declaration included unsupported conclusory statements that the doctors' treatment deviated from the standard of care.

On October 18, 2016, the superior court granted HMC's second request for partial summary judgment and granted Drs. Ondusko and Ekin's request for summary judgment.

On October 28, 2016, the Snowdens sought reconsideration. The superior court granted the request only on the claims against Dr. Ondusko.

On February 20, 2018, HMC filed its third request for summary judgment. The Snowdens stipulated to the dismissal of all claims against HMC with prejudice.

On December 6, 2018, Dr. Ondusko filed a renewed request for summary judgment. On January 25, 2019 the superior court granted Dr. Ondusko's request.

The Snowdens' appeal the summary judgment dismissals of their claims against Drs. Ondusko and Ekin.

ANALYSIS

The Snowdens contend the record establishes genuine issues of material fact about their claims against Drs. Ondusko and Ekin making the dismissal of those claims improper.

We review summary judgment orders de novo looking to see the record shows no remaining genuine issues of material fact entitling the moving party to summary judgment.[2] "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[3] Once the moving party has made an initial showing that there is no genuine issue of material fact, the burden shifts to the party opposing summary judgment.[4] The nonmoving party must respond with more than conclusory allegations, speculative statements, or argumentative assertions that unresolved factual issues exist.[5] We view all evidence in the light most favorable to the nonmoving party.[6]

Chapter 7.70 RCW governs civil actions for medical malpractice.[7] RCW 7.70.030(1) provides that to obtain damages for an injury resulting from health care treatment, the plaintiff must show by a preponderance of the evidence that their "injury resulted from the failure of a health care provider to follow the

---

[2] Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011) (quoting CR 56(c)).
[3] Reyes v. Yakima Health Dist., 191 Wn.2d 79, 86, 419 P.3d 819 (2018).
[4] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).
[5] Ruffer v. St. Frances Cabrini Hosp., 56 Wn. App. 625, 628, 784 P.2d 1288 (1990); Young, 112 Wn.2d at 226.
[6] Young, 112 Wn.2d at 225-226; CR 56(c).
[7] Branom v. State, 94 Wn. App. 964, 971, 974 P.2d 335 (1999).

accepted standard of care."  To prove an injury resulted from the health care provider's failure to follow the accepted standard of care, the plaintiff must show,

> (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;
>
> (2) Such failure was a proximate cause of the injury complained of.[8]

"[A]llegations of misdiagnosis without deviation from the proper standard of care are not the basis for liability."[9]

Testimony from a competent medical expert, who practices or has expertise in the relevant specialty, is generally necessary to establish the applicable standard of care in medical malpractice cases.[10]  The expert cannot just allege the defendants were negligent.[11]  The expert must establish the applicable standard of care, show how the defendants acted negligently by breaching that standard, and link their conclusions to a factual basis. [12]  An exception to the expert requirement exists when the negligence is self-evident and describable without medical training.[13]  "If a plaintiff lacks competent expert testimony to create a genuine issue of material fact with regard to one of the elements of the claim and

---

[8] RCW 7.70.040.
[9] Reyes v. Yakima Health Dist., 191 Wn.2d 79, 83, 419 P.3d 819 (2018).
[10] Reyes, 191 Wn.2d at 86-87 (citing Miller v. Jacoby, 145 Wn.2d 65, 71-72, 33 P.3d 68 (2001)); Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 232, 393 P.3d 776 (2017) (quoting Young, 112 Wn.2d at 228-29).
[11] Reyes, 191 Wn.2d at 86-87.
[12] Reyes, 191 Wn.2d at 87.
[13] Young, 112 Wn.2d at 228.

is unable to rely on an exception to the expert witness testimony requirement, a defendant is entitled to summary judgment."[14]

Here, the Snowdens had the burden to prove Dr. Ondusko's delay in diagnosing Joseph's right foot fracture, and Dr. Ekin's delay in diagnosing Debra's splenic injury, fell below the established standard of care and was the proximate cause of additional pain and treatment. To do so, the Snowdens presented the declaration of Dr. Fisk.

Dr. Fisk's Medical Expertise

First, we consider whether Dr. Fisk is a competent medical expert qualified to assess the standard of care Dr. Ondusko provided Joseph and that Dr. Ekin provided Debra.

The Snowdens assert Dr. Fisk was qualified to testify about Dr. Ondusko's standard of care. Dr. Ondusko disagrees. He notes Dr. Fisk said she was a specialist in emergency medicine, but she did not have enough knowledge to provide medical or surgical care of a foot fracture after diagnosis. Dr. Ondusko asserts that because Dr. Fisk "did not possess the knowledge, skills, expertise, training, or education to opine as to a causal link …the trial court properly dismissed the case on summary judgment."

Dr. Fisk testified she is a board certified physician specializing in Emergency Medicine. Dr. Fisk does not have "training, expertise, or experience in

---

[14] Reyes v. Yakima Health Dist., 191 Wn.2d 79, 86, 419 P.3d 819 (2018) (citing Morinaga v. Vue, 85 Wn. App. 822, 935 P.2d 637 (1997)).

orthopedic surgery," but she is "aware of orthopedic diagnoses." Dr. Fisk testified that "as an emergency physician [her] expertise does not extend to either the medical or the surgical care of a foot fracture." She explained she could only testify to the standard of care for Emergency Medicine.

Because Dr. Fisk is an experienced Emergency Medicine physician, she was only competent to discuss the standard of care of an Emergency Medicine physician acting in the same or similar circumstances as Dr. Ondusko treating Joseph. By her own admission, Dr. Fisk was not qualified to discuss the care of a foot fracture.

Similarly, as an experienced Emergency Medicine physician, Dr. Fisk was only competent to discuss the standard of care of an Emergency Medicine physician acting in the same or similar circumstances as Dr. Ekin treating Debra.

Dr. Ondusko

The Snowdens argue Dr. Fisk's testimony raised a genuine issue of material fact that Dr. Ondusko deviated from the standard of care of an Emergency Medicine physician. Dr. Ondusko argues Dr. Fisk's speculative and conclusory opinions did not raise a genuine issue of material fact about a causal link between the alleged negligence and injury.

Dr. Fisk testified she did not know how Dr. Ondusko examined Joseph's right leg or if he asked Joseph about his right leg. She testified, "I don't know what examination he did. [The clinic note] just says, right lower extremity: Ad lib." Dr. Fisk testified, "If [Dr. Ondusko] examined it correctly, then he would [have met

11

the standard of care]." She testified that during the examination, "it would have been very difficult for a patient to not feel pain on palpation to the facture site." But, she also testified that Joseph's December 30, 2011 medical record does not include documentation that Joseph complained of right foot pain to the paramedics, nurses, or Dr. Ondusko.

Dr. Fisk testified she could not say with a degree of reasonable medical certainty whether Joseph's outcome would have been different if he had been diagnosed earlier. Dr. Fisk testified,

A. I cannot with medical certainty, but what I can say is that the probability would have been better or a better outcome if the diagnosis had been done earlier.

The fundamental of any medical condition or care is that the earlier the diagnosis the better the outcome. And there was a significant delay in this patient's diagnosis.

Dr. Ngan, the podiatrist who diagnosed the Lisfranc fracture and performed surgery on Joseph, declined to testify but stated that Joseph "likely would have required surgery regardless, and [the] outcome would have been about the same."

Dr. Fisk could not say with medical certainty that Dr. Ondusko's examination deviated from the standard of care of another reasonably prudent Emergency Medicine physician, and she could not say with medical certainty the outcome would have been better if Joseph's fracture was diagnosed earlier. So, Dr. Fisk's statement that Dr. Ondusko's treatment of Joseph deviated from the standard of care is insufficient to create a genuine issue of material fact. We affirm the superior court's summary judgment dismissal.

Dr. Ondusko also asserts Dr. Fisk's second declaration did not state a prima facie loss of chance claim. Because Dr. Fisk's testimony does not establish Dr. Ondusko deviated from the standard of care, we need not address this issue.

Dr. Ekin

The Snowdens argue Dr. Fisk raised a genuine issue of material fact about Dr. Ekin's alleged deviation from the standard of care of an Emergency Medicine physician. Dr. Ekin responds, "Dr. Fisk failed to identify any medical facts suggesting that earlier monitoring would have prevented the rupture or allowed an earlier surgical intervention."

In her declaration, Dr. Fisk noted, "There was no mention of abdominal pain in the chief complaint which can make the identification of an intra-abdominal organ injury more challenging in the emergency department." Based on her review of Dr. Ekin's notes, she could not determine how carefully Dr. Ekin examined Debra. While Dr. Fisk stated Dr. Ekin's care fell below the standard of care, Dr. Fisk could not articulate how Dr. Ekin's care fell below that standard. Because Dr. Fisk's testimony only alleges Dr. Ekin was negligent without identifying supporting facts, it does not create a genuine issue of material fact. We affirm the superior court's summary judgment dismissal.

For the same reasons as above, we do not address Dr. Ekin's argument that Dr. Fisk did not state a prima facie loss of chance claim.

Attorney Fees

Drs. Ondusko and Ekin request attorney fees on appeal claiming the Snowdens filed a frivolous appeal. RAP 18.9(a) provides we may award attorney fees against a party who files a frivolous appeal. An appeal is frivolous for purposes of the rule when there are "no debatable issues over which reasonable minds could differ, and there is so little merit that the chance of reversal is slim."[15] We resolve doubts as to whether an appeal is frivolous in the appellant's favor.[16] We conclude the Snowdens' appeal was not frivolous and deny the fee request.

## CONCLUSION

The Snowdens did not create a genuine issue of material fact through expert testimony. The superior court correctly dismissed their claims on summary judgment. We affirm.

Leach, J.

WE CONCUR:

---

[15] Kearney v. Kearney, 95 Wn. App. 405, 417, 974 P.2d 872, rev. denied 138 Wn.2d 1022, 989 P.2d 1137 (1999).

[16] Advocates for Responsible Dev. v. Western Wash. Growth Mgmt. Hearings Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010).